The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Richard Lee MARTINEZ,
Defendant–Appellant.

No. 98CA2518.

Colorado Court of Appeals,
Div. I.

April 26, 2001.

Certiorari Denied Dec. 17, 2001. *

---

\* Justice MARTINEZ would grant as to the following issues:

Whether the court of appeals erroneously concluded that the numerous alleged instances of prior sexual misconduct, dating back to Petitioner's behavior as a ten-year-old, were properly admitted under applicable case law and CRE 404(b).

Whether the court of appeals erroneously extended the holding in *Dunton v. People,* 898 P.2d 571 (Colo. 1995) to justify the trial court's refusal to instruct the jury on Petitioner's affirmative defense of consent to the charges of second degree sexual assault.

Whether the court of appeals incorrectly approved the trial court's vague, confusing and misleading limiting instruction with regard to the uncharged misconduct evidence.

Ken Salazar, Attorney General, Lauren Edelstein Park, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Ann M. Aber, Deputy State Public Defender, James Grimaldi, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge METZGER.

Defendant, Richard Lee Martinez, appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree sexual assault by penetration, second degree sexual assault by intrusion, attempt to commit second degree sexual assault by intrusion, first degree sexual assault by intrusion, and second degree burglary. We affirm.

The evidence at trial showed the following facts. On September 5, 1997, defendant, a student at a vocational-technical center, gave another student a ride home to Montrose. The victim, who was that student's sister, rode back to town with defendant to complete some errands. They had never met before that day.

On the way, defendant stopped at his house. The victim went inside with him; they both smoked marijuana and watched television. When defendant began to kiss the victim, she objected. He then picked her up, took her to the bedroom, disrobed her, put her on the bed, and sexually assaulted her digitally. These acts formed the basis of the second degree sexual assault by intrusion charge. Afterwards, he required her to perform fellatio on him. This act formed the basis of the second degree sexual assault by penetration charge.

Thereafter, defendant and the victim drove to town, did some shopping, and the victim bought defendant's dinner at a McDonald's restaurant. When defendant took the victim back to her house, he again picked her up after she strenuously resisted him, carried her into the bedroom, and attempted to have sexual relations with her. She told him "no"; he became upset and left. This conduct

formed the basis of the attempted second degree assault by intrusion charge.

That evening, the victim told her sister what had happened. She said she had initially said "no" to defendant when he began his advances, but finally had said "yes" because she was afraid of him. Defendant later told the victim's sister to "tell [the victim] I'm sorry if I just went overboard."

On September 30, 1997, defendant entered the victim's house without permission. She ran for a knife, but defendant overpowered her. He carried her to the bedroom where he again threw her onto the bed, undressed her, and sexually assaulted her digitally. This conduct formed the basis of the first degree sexual assault by intrusion and second degree burglary charges. Afterwards, the victim chased him out of the house with a knife, and she reported that incident and the incidents of September 5 to the police. Defendant was later arrested.

While in custody, defendant wrote a letter to the Montrose County sheriff requesting that Mesa County authorities be advised that defendant had information regarding an unsolved 1979 homicide in Grand Junction. In a later interview with Mesa County authorities, defendant said he had forced nine women, including his sister, to have sex with him. Defendant repeated those assertions in a letter to the Mesa County District Attorney.

At trial, defendant argued the victim had consented to the September 5, 1997, incidents and that no sexual contact had occurred on September 30, 1997. Over defendant's objection, the trial court admitted the interview transcript and defendant's letters to refute the defenses of consent and recent fabrication for the September 5, 1997, incidents only. Evidence underlying defendant's two previous convictions for sexual assault was admitted to show a common plan, scheme, or design, *modus operandi*, intent, and preparation and to refute the defenses of consent and recent fabrication for all incidents.

The jury found defendant guilty of all charges.

## I.

Defendant contends the trial court erred by admitting evidence of the prior sexual assaults because: (1) the court did not conduct the tests for admissibility as required by *People v. Spoto*, 795 P.2d 1314 (Colo.1990), and *People v. Garner*, 806 P.2d 366 (Colo. 1991), under the mistaken belief that § 16–10–301, C.R.S.2000, had superseded these tests; and (2) the evidence of the prior sexual assaults did not satisfy these tests. While we agree that the *Spoto/Garner* tests should have been employed, because the record supports the trial court's admission of the challenged evidence, reversal is not required.

A trial court has substantial discretion in deciding the admissibility of evidence of similar transactions, and its rulings will be upheld absent an abuse of that discretion. *People v. Rodriguez*, 914 P.2d 230, (Colo. 1996); *see People v. Janes*, 942 P.2d 1331 (Colo.App.1997). Even if a trial court employs an erroneous standard in determining the admissibility of similar transaction evidence, if the evidence is admissible and the foundational requirements for its admission are met, the defendant's conviction will not be overturned. *People v. McKibben*, 862 P.2d 991 (Colo.App.1993).

The People concede, and we agree, that the 1996 repeal and re-enactment of § 16–10–301 did not supersede all previous authority concerning the applicable tests for the admissibility of evidence of other misconduct.

The amended statute contains no new language that could be interpreted to erode the continued vitality of CRE 404(b), *People v. Spoto, supra, People v. Garner, supra,* or their progeny. The statute is couched in permissive, not mandatory, language. Additionally, the fact that § 16–10–301 applies specifically to prosecutions for unlawful sexual behavior and for first degree murder does not eliminate the necessity of a CRE 404(b) analysis.

Furthermore, the legislative history of the amendment supports this interpretation. Testimony before the House Judiciary Committee was clear that the 1996 change "comports with [CRE] 404(b) and [CRE] 403,"

and "tracks" those rules of evidence. In discussing the purpose and scope of the amendment, one witness stated: "Then there's the true cookbook of exactly what the trial court shall do that follows a whole line of cases[,] *Stull [v. People*, 140 Colo. 278, 344 P.2d 455 (1959)*], [People v.] Honey [*198 Colo. 64, 596 P.2d 751 (1979)] and a number of cases that have occurred...." Hearing on H.B. 96–1181 before the House Judiciary Committee, 60th General Assembly, First Session (February 1, 1996)(testimony of Ray Slaughter of the Colorado District Attorney's Council).

For these reasons, we conclude that the trial court erred in accepting the prosecution's argument that § 16–10–301 superseded previous authority regarding the admissibility of evidence of other misconduct and in not engaging in a *Spoto/Garner* analysis.

Nevertheless, because the record supports the trial court's admission of the other misconduct evidence here under the appropriate standard, reversal is not required.

■ To be admitted, the other misconduct evidence must relate to a material fact and must be logically relevant. The logical relevance must also be independent of the prohibited inference that the defendant has a bad character. Finally, the probative value of the evidence must substantially outweigh the danger of unfair prejudice. *People v. Spoto, supra.* Additionally, it must be established that the defendant engaged in the other misconduct. *People v. Garner, supra.*

### A.

■ Defendant argues the trial court erred in admitting the facts forming the basis of two sexual assaults that had resulted in convictions, because this evidence was unfairly prejudicial and was unconstitutional propensity evidence. We disagree.

Defendant did not dispute that he had committed these sexual assaults. Accordingly, the requirement of *People v. Garner, supra,* was met.

Application of the *Spoto* factors to the facts of those previous sexual assaults shows no abuse of discretion in allowing those victims to testify to counter defendant's asser-

tion that the victim in this case had consented and/or had recently fabricated her version of the events.

While evidence of prior misconduct is often relevant to the issue of identity, such evidence can also be probative of a defendant's intent. In a pretrial "Order Regarding Hearings," the trial court stated: "Defense agrees identity is not an issue." Thus, we will analyze the evidence as it relates to the issue of intent.

First, defendant agrees that intent is "the other side of the coin" of consent and/or fabrication. The proffered evidence related to the material issue of intent by showing defendant's common plan, scheme, design, *modus operandi,* and preparation. *See People v. Janes, supra.* These factors can be used to show a defendant's intent and are appropriate to refute a consent defense. *See* E. Imwinkelried, *Uncharged Misconduct Evidence* §§ 5:01–5:42 (rev. ed.1999).

Second, the evidence was logically relevant because it had a tendency to make defendant's intent to commit these crimes and the victim's lack of consent or lack of recent fabrication more probable with the evidence than without it. The offenses all shared common distinctive characteristics sufficient to allow reasonable jurors to infer that they were committed deliberately.

Third, the logical relevance of the evidence was independent of the inference that defendant was a person of bad character who had committed the crimes charged in conformity with such bad character. The evidence showed a pattern of behavior in committing sexual assaults that did not relate to any character flaws or propensity.

The prior sexual assaults and the charged offenses shared significant features, making it more likely than not that defendant had intentionally committed the charged offenses and that the victim had not consented or recently fabricated her report.

Defendant chose victims with whom he was acquainted and forced his way into their homes. He placed his hand over the victims' mouths and threatened them if they screamed. He pushed the victims down onto

a bed or couch so they could not move, removed their clothes, digitally penetrated them, and attempted have vaginal intercourse, but could not maintain an erection.

As in *People v. Duncan*, 33 P.3d 1180 (Colo.App.2001), the probability that defendant here intended to have sexual contact with the victim was increased by the evidence that he had similarly attempted to commit or had committed sexual assaults on two other young women in the past.

The probative value of this evidence in assisting the jury to analyze defendant's state of mind outweighed the danger of unfair prejudice. *See People v. Willner*, 879 P.2d 19 (Colo.1994). Additionally, because the trial court instructed the jury concerning the limited purpose of the evidence both before the testimony of the two previous victims and at the close of the evidence, any danger of unfair prejudice was reduced. Moreover, the jury was not told that these assaults had formed the basis of any felony arrests or convictions.

Because the evidence concerning the prior sexual assaults meets the requirements of *Spoto/Garner*, we conclude the trial court did not abuse its discretion by admitting such evidence.

### B.

Defendant also argues the trial court erred in admitting letters and an interview transcript in which he said he had committed nine instances of sexual misconduct. He asserts this evidence was "overwhelmingly prejudicial" and served as unconstitutional propensity evidence. Again, we disagree.

Application of the *Spoto/Garner* test to this evidence leads us to conclude that the trial court did not abuse its discretion in admitting it.

First, the evidence demonstrated that defendant knew the difference between consensual sex and "forced intercourse" or "rape." In several instances in defendant's letters and interview, he had distinguished between consensual and forced sexual encounters and had explained that the forced encounters had occurred after he had been rejected. This evidence was relevant and material to prove both defendant's intent and the victim's lack of consent or lack of fabrication.

Second, the evidence was logically relevant to the material issue of defendant's intent on September 5, 1997, because it tended to make it more likely that, when the victim pushed defendant away, clenched her legs together, and told him to "leave her alone," defendant knew she did not want to have sex. It tended to show that defendant knew he was not engaging in consensual sex and was forcing himself on a woman who had previously rejected his advances.

Third, the logical relevancy of the evidence was independent of an impermissible inference of bad character. Its refutation of the defenses of consent and fabrication and its reinforcement of defendant's intent rendered it independent of that impermissible inference.

Finally, the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. The trial court twice instructed the jury to consider defendant's admissions in the letters and interview only for the purposes of refuting the defenses of consent or recent fabrication and for no other purposes. Nothing in the record here suggests that the jury failed to understand or to apply those instructions.

Thus, no abuse of discretion occurred.

### II.

Defendant next argues his statements in his letters and interview were excludable under CRE 410 and that, therefore, the trial court erred in admitting them. We find no error.

CRE 410 provides in relevant part:

[E]vidence of a plea of guilty, later withdrawn, or a plea of *nolo contendere,* or of an offer to plead guilty or *nolo contendere* to the crime charged or any other crime, or of statements made in any connection with any of the foregoing pleas or offers, is not admissible in any civil or criminal action, case, or proceeding against the person who made the plea or offer.

This rule does not extend to discussions between a crime suspect and law enforcement agents. Rather, it applies only to discussions between defense counsel, or *pro se* litigants, and prosecuting attorneys who have specific authority to bind the government to a plea agreement later consummated in court. While the prosecuting attorney need not be physically present, his or her knowledge and consent to be bound by such discussions is an essential prerequisite to application of the rule. *People v. Rollins*, 759 P.2d 816 (Colo.App.1988).

During his conversations with the Mesa County law enforcement officer, defendant requested consideration for his pending Montrose County charges in exchange for the information he was providing. The officer refused to discuss defendant's pending Montrose County cases and told him that any consideration would be up to defendant, his attorney, and the prosecuting attorney. Despite this rejection of his sole request for consideration, defendant continued to provide information to the officer and later conducted a taped interview with another officer.

There is no evidence that any of the law enforcement officers with whom defendant spoke had authority to enter into any sort of plea negotiations or that defendant knew or suspected they did. Furthermore, it is clear that defendant never spoke with a prosecuting attorney and that no such attorney was aware of, or gave permission for, any plea negotiations. Nor is there any evidence that any of the law enforcement officials gave any indication that any concessions were possible.

Defendant's unilateral choice to provide information to those who had no authority to conduct plea negotiations failed to transform his statements into disclosures made "in any connection with" any offers to plead guilty. Thus, those statements do not fall within the ambit of CRE 410, and consequently the trial court was correct in denying defendant's motion to suppress his statements.

We do not agree with defendant that the prosecutor's comment, in rebuttal closing argument, that defendant "was doing this to cop a deal" is so inconsistent with the prosecutor's earlier position—that defendant's admissions had not been made in the course of plea negotiations—that the doctrine of judicial estoppel applies.

Judicial estoppel requires, among other things, that a party take inconsistent positions in the same or related proceedings. *See Farmers High Line Canal & Reservoir Co. v. City of Golden*, 975 P.2d 189 (Colo. 1999).

In the hearing on defendant's CRE 410 motion to suppress, the prosecutor had argued that defendant had only a unilateral hope that the law enforcement officials, on their own initiative, would intervene in this case. At trial, the prosecutor essentially repeated this theme, saying: "You will recall that [defendant] was doing this to cop a deal in this case. He was hoping for some consideration in talking with those officers from [Mesa County] in this case. There is a reason, and that reason is not selfless as has been portrayed to you."

These statements reflect a consistent position, that defendant "hoped" for assistance. Consequently, the doctrine of judicial estoppel is not applicable here.

## III.

Defendant contends the trial court committed reversible error by relying on *Dunton v. People*, 898 P.2d 571 (Colo.1995), and its progeny and by refusing to instruct the jury on the affirmative defense of consent concerning the charges of second degree assault by penetration and second degree assault by intrusion. We disagree.

Affirmative defenses provide a legal justification for what would otherwise be criminally culpable behavior. *People v. Reed*, 932 P.2d 842 (Colo.App.1996). In general, consent is an affirmative defense. *See* § 18–1–505, C.R.S.2000. However, "[t]he consent of the victim to conduct charged to constitute an offense or to the result thereof is not a defense unless the consent negatives an element of the offense or precludes the infliction of the harm or evil sought to be prevented by the law defining the offense." Section 18–1–505(1), C.R.S.2000.

In *Dunton v. People, supra*, the supreme court held that consent was not an affirmative defense to the charge of first degree sexual assault by the application of physical force and violence. The court reasoned that "the first degree sexual assault statute prohibits conduct which by its very nature negates the existence of the victim's consent. The statute equates the victim's nonconsent with proof that the defendant has caused the victim's submission by force, by threat either of great harm or of retaliation, or by deception. . . . These acts of the defendant cause the victim to be unable to consent." *Dunton v. People, supra*, 898 P.2d at 573 (citation omitted).

The applicable version of the second degree sexual assault statute here provided:

Any actor who knowingly inflicts sexual penetration or sexual intrusion on a victim commits sexual assault in the second degree if:

(a) The actor causes submission of the victim to sexual penetration by any means other than those set forth in Section 18–3–402 [first degree sexual assault], but of sufficient consequence reasonably calculated to cause submission against the victim's will; or

(b) The actor causes submission of the victim to sexual intrusion by any means other than those set forth in Section 18–3–402, but of sufficient consequence reasonably calculated to cause submission against the victim's will. . . .

Colo. Sess. Laws 1977, ch. 224, § 18–3–403(1) at 962; Colo. Sess. Laws 1977, ch. 171, § 18–3–403(1)(a) at 628; Colo. Sess. Laws 1977, ch. 199, § 18–3–403(1)(b) at 698.

As the trial court determined, this statute, like the first degree sexual assault statute discussed in *Dunton v. People, supra*, equated the victim's nonconsent with proof that the defendant had caused the victim's submission by means "of sufficient consequence reasonably calculated to cause submission against the victim's will." Thus, the jury could only convict a defendant after concluding that the prosecution had proved the victim's lack of consent beyond a reasonable doubt.

Moreover, the jury here was correctly instructed on the elements of second degree sexual assault and on the prosecution's burden to prove all elements beyond a reasonable doubt. Additionally, defendant's theory of the case instruction, stating that the sexual activity was "by mutual consent," was also given.

Consequently, because the instructions as a whole adequately informed the jury, the trial court committed no error in refusing to give defendant's instruction on the affirmative defense of consent.

## IV.

Defendant next contends the trial court's limiting instruction concerning the uncharged misconduct evidence was so "ineffectual, vague, and confusing" as to require reversal. We do not agree.

Because the record does not contain a transcript of the jury instructions conference, we have no indication that defendant objected to the instructions. However, because we conclude no error occurred, we need not decide whether defendant's contentions are reviewable only for plain error.

## A.

Defendant first argues the limiting instruction was misleading because none of the instances of uncharged misconduct rebutted the defense of recent fabrication. We perceive no error.

"Recent fabrication" under § 16–10–301 applies to a defendant's assertions that the victim's initial disclosure was fabricated. *See People v. Janes, supra.*

Defendant argued that the sexual activity with the victim on September 5, 1997, was consensual, and he maintained that, on September 30, 1997, he had no sexual contact with the victim. He asserted that the victim had essentially fabricated both her lack of consent to the September 5, 1997, incidents and the existence of the sexual assault on September 30, 1977. Therefore, the instruction was appropriate.

### B.

Defendant also argues the limiting instructions did not limit the purposes for which uncharged misconduct evidence could be admitted. He contends the instructions merely repeated the language of CRE 404(b), causing confusion and misapplication of the evidence by the jury. The record does not support this contention.

The limiting instructions did not simply parrot the language of CRE 404(b). Instead, with regard to defendant's prior sexual assaults that had resulted in convictions, the limiting instruction included only those purposes that related to defendant's having committed sexual assaults in a distinctive manner (*i.e.*, common plan, scheme, or design, *modus operandi*, intent, and preparation) or that refuted defendant's defenses of consent and recent fabrication. The court omitted the remaining purposes for CRE 404(b) evidence, *i.e.*, motive, opportunity, knowledge, identity, and absence of mistake or accident from that instruction.

With regard to the evidence of defendant's admissions of prior sexual misconduct, the court instructed the jury that it could consider that evidence only for the purposes of refuting the defenses of consent or recent fabrication regarding the alleged sexual assaults on September 5, 1997, and for no other purpose.

In addition, the trial court distinguished between the two types of uncharged misconduct evidence and the separate purposes for which each type was to be used. There is no indication that the jury failed to apply the instructions properly. *See People v. Dunlap*, 975 P.2d 723 (Colo.1999).

Accordingly, no error occurred.

### V.

Defendant next argues the evidence was insufficient to sustain the jury verdicts finding him guilty of second degree sexual assault by penetration, second degree sexual assault by intrusion, and attempted second degree sexual assault by intrusion stemming from the incidents on September 5, 1997. We disagree.

A challenge to the sufficiency of the evidence requires a reviewing court to determine whether the evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support the conclusion by a reasonable person that the defendant is guilty of the crime charged beyond a reasonable doubt. *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973). The prosecution must be given the benefit of every reasonable inference that might fairly be drawn from the evidence, and the determination of the credibility of witnesses and resolution of inconsistencies in the testimony are solely within the province of the fact finder. *People v. Downer*, 192 Colo. 264, 557 P.2d 835 (1976); *People v. Ager*, 928 P.2d 784 (Colo.App.1996).

### A.

Defendant first contends reversal is required by the prosecution's failure to prove specific and articulable facts to establish the elements of the second degree sexual assault by penetration and second degree sexual assault by intrusion charges. We reject this contention.

The conduct prohibited by the second degree sexual assault statute is knowing sexual penetration of or intrusion upon a nonconsenting victim. It is the actor's knowing persistence in the conduct, notwithstanding the lack of communicated consent, that is necessary for the *mens rea*. Although the actor need not know that the victim in fact submits nonconsensually, the actor must be aware that his conduct is sufficient in character and degree to be likely to cause nonconsensual submission. *People v. Smith*, 638 P.2d 1 (Colo.1981).

The combination of defendant's authoritative tone of voice and his actions (including throwing the victim on the bed, disrobing her, and prying open her legs) could be viewed objectively to be of such a character and degree as to be likely to cause the victim to submit against her will. The victim's testimony that she was scared, that she said "no" to defendant at least seven times, that she moved her head back when he kissed her, and that she clamped her legs shut

provided a sufficient basis upon which a jury could find that she resisted defendant and that he thereafter caused submission against her will. *See People v. Schmidt,* 885 P.2d 312 (Colo.App.1994).

This evidence and its inferences, when assessed in the light most favorable to the prosecution, is substantial and sufficient to support the conclusion by a reasonable person that defendant was guilty of second degree sexual assault by penetration and second degree sexual assault by intrusion on September 5, 1997.

## B.

■ Defendant also contends the evidence is insufficient to establish his guilt of attempted second degree sexual assault by intrusion. We disagree.

A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he or she engages in conduct constituting a substantial step toward the commission of the offense. Section 18–2–101(1) C.R.S.2000; *People v. Harris,* 892 P.2d 378 (Colo.App. 1994).

■ An attempt to commit a crime is any overt act done with the intent to commit the crime, which, except for the interference of some cause preventing the carrying out of the intent, would have resulted in commission of the crime. *Martin v. People,* 179 Colo. 237, 499 P.2d 606 (1972). The overt act need not be the last proximate act necessary to complete the offense. *People v. Young,* 694 P.2d 841 (Colo.1985).

A substantial step is conduct that is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense. Section 18–2–101(1).

Defendant's acts of seizing and carrying the victim to the bed, in the face of her repeated strenuous physical resistance and verbal protestations, constitute conduct sufficient to be strongly corroborative of the firmness of his purpose to complete the crime of second degree assault by intrusion. This evidence shows that defendant engaged in a substantial step toward the commission of the crime.

Contrary to defendant's argument, *People v. Derrera,* 667 P.2d 1363 (Colo.1983), does not require a different result. There, the defendant touched the victim's thigh once and suggested that they go to his apartment. When the victim pushed his hand away and said, "Please don't do this to me," he ceased his sexual advances and demanded money from her. The supreme court held that this conduct was insufficient to constitute the substantial step necessary for attempted second degree assault.

Here, in contrast, defendant pried the victim away from the kitchen doorframe and cabinets, ignored her repeated protests, picked her up, carried her into the bedroom, and put her on the bed. These actions were much more extensive in both duration and degree than those in *People v. Derrera, supra,* and thus, satisfied the substantial step requirement.

■ Because it is raised for the first time in his reply brief, we will not address defendant's argument that his alleged abandonment of his efforts should have resulted in, at most, an acquittal or, at least, a *sua sponte* instruction by the court. *See People v. Czemerynski,* 786 P.2d 1100 (Colo.1990).

## VI.

■ Finally, defendant asserts the trial court erred in imposing consecutive sentences for the charges of second degree sexual assault by penetration and second degree sexual assault by intrusion. He argues these offenses were part of one continuous event and were based on identical evidence. Therefore, he contends, he should have received concurrent sentences. We disagree.

■ Concurrent sentences in a multiple count situation are required only when the counts are based on the same act or series of acts arising from the same criminal episode and the evidence supporting the counts is identical. If both of those requirements are not met, the court retains its discretion to impose concurrent or consecutive sentences. *Qureshi v. District Court,* 727 P.2d 45 (Colo.1986). Offenses are not necessarily supported by identical evidence even though there are some common elements of proof, *People v. Osborne,* 973 P.2d 666 (Colo.App.1998), nor does the mere fact that the offenses took place during one continuous criminal episode establish that they

were supported by identical evidence. *People v. Allen*, 944 P.2d 541 (Colo.App.1996).

The two counts of second degree sexual assault stemmed from the September 5, 1997 incidents. The first count required proof that defendant knowingly forced the victim to perform fellatio on him. The second count required proof that defendant digitally penetrated the genital opening of the victim for the purposes of sexual arousal, gratification, or abuse.

Because these offenses were separate and distinct, and required proof of different facts to establish their disparate elements, the fact that some of the evidence supporting them was part of a "common fund" does not detract from their separateness. *See People v. Leske*, 957 P.2d 1030 (Colo.1998). Thus, the trial court did not err in imposing consecutive sentences.

In light of this disposition, we need not address defendant's remaining contentions.

The judgment is affirmed.

PLANK and VOGT, Judges, concur.