2013 CO 59

**The PEOPLE of the State of Colorado, Petitioner**

v.

**Michael Lee JONES, Respondent**

**No. 11SC801**

Supreme Court of Colorado.

October 15, 2013

John W. Suthers, Attorney General William G. Kozeliski, Assistant Attorney General, Denver, Colorado, Attorneys for Petitioner.

Nora V. Kelly, P.C. Nora V. Kelly, Denver, Colorado, Attorneys for Respondent.

JUSTICE RICE delivered the Opinion of the Court.

¶ 1 In this sexual assault case, we hold that trial courts have no obligation to determine that evidence of other acts offered under CRE 404(b) and section 16–10–301, C.R.S. (2013), satisfies the doctrine of chances to also satisfy the second and third prongs of the four-part admissibility test articulated in *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990). Although the doctrine of chances provides one theory pursuant to which other acts evidence may satisfy these two components of the *Spoto* analysis, trial courts have discretion to assess the relevance of other acts evidence under *Spoto* apart from the doctrine of chances. The court of appeals therefore erred when it effectively held that the trial court abused its discretion by admitting other acts evidence without conducting a doctrine of chances analysis.

## I. Facts and Procedural History

¶ 2 J.R., a white female with blond hair, was walking home from a convenience store at about 2:00 a.m. on December 1, 2005, when a man offered her a ride. After driving J.R. to her apartment complex, the man asked J.R. if he could come inside for a glass of water. J.R. alleged that once inside her apartment, the man held her mouth tightly closed and sexually assaulted her. J.R. reported the alleged assault to the police.

¶ 3 J.R. was visibly upset when police arrived at her apartment. The responding officers testified that they smelled alcohol on J.R.'s breath. The officers took J.R. to the hospital for a sexual assault examination. J.R. told a nurse she had been raped and complained of neck and jaw pain stemming from when her assailant held her mouth closed. The subsequent exam revealed the presence of semen and a tear in J.R.'s vagina. DNA evidence later implicated Respondent Michael Lee Jones as J.R.'s assailant.

¶ 4 The People charged Jones with numerous offenses including sexual assault and unlawful sexual conduct. Prior to trial, Jones moved the trial court to bar the People from introducing evidence that Jones allegedly sexually assaulted two other women, one in Florida and one in Louisiana. The trial

court denied Jones's motion. It analyzed the evidence of the two other alleged assaults under the four-part *Spoto* admissibility test and concluded that the other acts evidence was admissible to show Jones's "common plan, scheme, or design, and . to rebut [Jones's] defense of consent."

¶ 5 The case proceeded to a five-day jury trial. The prosecution presented the other acts evidence over Jones's objection. After deliberations, the jury convicted Jones of both sexual assault and unlawful sexual contact. The trial court sentenced Jones to concurrent terms of twenty-four years to life and twelve years to life in the Department of Corrections.

¶ 6 Jones appealed his conviction to the court of appeals. Relevant to this opinion, Jones argued that the trial court erred by admitting evidence of the Florida and Louisiana sexual assaults under CRE 404(b) because the acts were not sufficiently similar to the charged conduct involving J.R.

¶ 7 The court of appeals agreed with Jones and reversed the trial court's oral order admitting the other acts evidence. *People v. Jones*, 313 P.3d 626, 629–30, No. 09CA2362, 2011 WL 3616006, at *1 (Colo.App. Aug. 18, 2011). It held that the trial court abused its discretion by admitting evidence of the alleged Florida and Louisiana sexual assaults because that evidence did not satisfy the doctrine of chances and therefore was inadmissible under *Spoto*. *Id.* at 632–33, 2011 WL 3616006 at *4. The People petitioned this Court for certiorari review of the court of appeals' opinion.

¶ 8 We granted certiorari to determine whether a trial court can admit other acts evidence without conducting a doctrine of chances analysis.[1] We now reverse the judgment of the court of appeals.

## II. Analysis

¶ 9 The court of appeals erred when it unnecessarily limited trial court discretion by tying the four-part *Spoto* test to the doctrine of chances. While evidence that satisfies the doctrine of chances may also satisfy the second and third prongs of the *Spoto* analysis, trial courts may admit CRE 404(b) evidence under *Spoto* without also determining that the evidence is admissible under the doctrine of chances.

¶ 10 To reach this conclusion, we first describe the deferential standard of review appellate courts employ when reviewing a trial court's evidentiary ruling. We then describe the law surrounding CRE 404(b) and address why the court of appeals erred by effectively requiring the trial court to assess other acts evidence under the doctrine of chances as part of its *Spoto* analysis. Finally, we analyze the record to conclude that the trial court did not abuse its discretion by admitting the other acts evidence in this case.

### A. Standard of Review

¶ 11 Trial courts have "substantial discretion when deciding whether to admit evidence of other acts." *Yusem v. People*, 210 P.3d 458, 463 (Colo.2009). Appellate courts review a trial court's decision to admit or exclude other acts evidence for an abuse of this discretion. *Id.* An appellate court will only disturb the trial court's ruling if "it was manifestly arbitrary, unreasonable, or unfair." *Id.*

### B. *Spoto* and the Doctrine of Chances

¶ 12 This case requires us to clarify the role the doctrine of chances plays in the trial court's admissibility analysis under *Spoto*. CRE 404(b) permits a trial court to admit evidence of a defendant's other crimes, wrongs, or acts for the purpose of proving "motive, opportunity, intent, preparation,

---

1. We granted certiorari on the following two issues as stated by the Petitioner:
   (1) Whether prior act evidence was admissible for purposes which did not require that the acts be admitted pursuant to the doctrine of chances or be highly similar to the charged conduct.
   (2) Whether the court of appeals erred in its application of the doctrine of chances, and in

its determination that the trial court abused its discretion and that any error was not harmless.

Because we hold that the other acts evidence does not necessarily have to satisfy the doctrine of chances to be admissible under *Spoto*, we need not define the contours of the doctrine of chances under Colorado law for the first time in this case.

plan, ... or absence of mistake or accident." The trial court may not, however, admit evidence of the defendant's other acts "to prove the character of a person in order to show that he acted in conformity therewith." *Id.*

¶ 13 Recognizing that sexual offenses "are a matter of grave statewide concern," section 16–10–301(1), the General Assembly has specifically delineated the CRE 404(b) admissibility requirements for other acts evidence in the sexual offense context. The prosecution in a sexual offense case "may introduce evidence of other acts of the defendant to prove the commission of the offense as charged for any purpose other than propensity." § 16–10–301(3). Such purposes include:

> Refuting defenses, such as consent ...; showing a common plan, scheme, design, or modus operandi, regardless of whether identity is at issue and regardless of whether the charged offense has a close nexus as part of a unified transaction to the other act; showing motive, opportunity, intent, ... or absence of mistake or accident; or for any other matter for which it is relevant.

*Id.*

¶ 14 Before a trial court may admit other acts evidence under CRE 404(b) and section 16–10–301, it must analyze the admissibility of the evidence under the four-part *Spoto* test, 795 P.2d at 1318. *See Yusem*, 210 P.3d at 463 (recent application of *Spoto* test); *People v. Snyder*, 874 P.2d 1076, 1078 (Colo. 1994) (requiring trial courts to apply *Spoto* test before admitting evidence of similar acts under the Colorado Rules of Evidence).

¶ 15 This four-part analysis requires the trial court to determine that: (1) the evidence relates to a material fact; (2) the evidence is logically relevant; (3) the logical relevance is independent of the intermediate inference that the defendant was acting in conformity with his bad character; and (4) the evidence has probative value that is not substantially outweighed by the danger of unfair prejudice. *Spoto*, 795 P.2d at 1318.

¶ 16 Only the second and third prongs of the *Spoto* analysis are at issue in this case. Under the second prong, evidence is logically relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401; *see Yusem*, 210 P.3d at 463. The related third prong of the *Spoto* test requires that logically relevant evidence achieve its relevance in some way other than through the impermissible inference that a person who engages in a bad act does so because he acts in conformity with his bad character. *See* CRE 404(b); *Yusem*, 210 P.3d at 466 (quoting *Spoto*, 795 P.2d at 1318). While this third prong does not demand the absence of the impermissible character inference, it "requires that the proffered evidence be logically relevant *independent* of that inference." *Snyder*, 874 P.2d at 1080 (emphasis added); *see also Spoto*, 795 P.2d at 1318.

¶ 17 The "doctrine of chances" provides one theory of relevance under which a trial court may determine that other acts evidence satisfies the second and third prongs of the *Spoto* analysis.[2] The court of appeals below, however, effectively held that other acts evidence *must* satisfy the doctrine of chances to also satisfy the second and third prongs of the *Spoto* test by confining its analysis of the second and third *Spoto* prongs to a doctrine of chances "box." *See Jones*, 313 P.3d at 631–33, 2011 WL 3616006, at *3–4. We disagree with this holding because this state's precedent makes clear that

> [W]hen one person claims rape, the unusual and abnormal element of lying by the complaining witness may be present. But, when two (or more) persons tell similar stories, the chances are reduced that both are lying or that one is telling the truth and the other is coincidentally telling a similar false story.

*Jones*, 313 P.3d at 631–32, 2011 WL 3616006, at *3 (quoting *Everett*, 250 P.3d at 657 (internal quotation omitted)).

---

**2.** The doctrine of chances "is based on the instinctive logical process that reasonably determines that unusual and abnormal events are unlikely to recur by chance." *People v. Everett*, 250 P.3d 649, 656 (Colo.App.2010) (citing 2 John Wigmore, *Evidence in Trials at Common Law* § 302, at 241 (Chadbourn rev. 1979)). In the sexual offense context, other acts evidence that is relevant pursuant to the doctrine of chances can be particularly important due to the "he said, she said" nature of such cases:

trial courts have discretion to conduct *Spoto* analyses without also assessing the relevance of other acts evidence under the doctrine of chances.

¶ 18 For example, in *People v. Rath*, 44 P.3d 1033, 1040 (Colo.2002), this Court held that other acts evidence in a sexual offense case was logically relevant independent of the impermissible character inference without conducting a doctrine of chances analysis. To show the defendant's common plan, scheme, or design; modus operandi; motive; or intent; and to refute the defendant's contention that the alleged victim's claim of sexual intercourse was a fabrication, the prosecution offered other acts evidence showing that the defendant picked young women up in his car on four separate occasions, drove each to a secluded location, and indicated that he intended to have sexual relations with each of them. *Id.* at 1037, 1039.

¶ 19 This Court held that the other acts evidence was relevant under CRE 401 and therefore satisfied the second *Spoto* prong because it provided "evidence from which the jury could find that the defendant had a history of offering young women a ride as a ruse to isolate them and have sex with them, regardless of their consent." *Id.* at 1040. The evidence "had a least some tendency to make it more probable as a logical matter that [the defendant] intended to have sex with the victim in the charged offense, after admittedly offering her a ride under similar circumstances." *Id.* at 1040–41. The Court made no mention of the doctrine of chances in this analysis. *See id.*

¶ 20 The Court also refrained from injecting the doctrine of chances into its discussion of the third *Spoto* prong. *See id.* at 1041. Instead, it reasoned that the evidence of other sexual bad acts demonstrated the defendant's "pattern of using a particular technique to accomplish a particular end" and "tended to show that when the defendant did certain things, in a certain way, a number of times in the past, he did so with a criminal purpose, and he took affirmative action to accomplish that purpose." *Id.*

¶ 21 Similarly, the court of appeals in *People v. Martinez*, 36 P.3d 154, 159 (Colo.App. 2001), upheld the trial court's decision to admit evidence of other sexual acts to show the victim's lack of consent without conducting a doctrine of chances analysis. Applying the second *Spoto* prong, the court of appeals determined that the other acts evidence was "logically relevant because it had a tendency to make ... the victim's lack of consent ... more probable with the evidence than without it." *Id.* "The offenses all shared common distinctive characteristics sufficient to allow reasonable jurors to infer that they were committed deliberately" by the defendant without the victim's consent. *Id.* The court of appeals additionally concluded, under the third *Spoto* factor, that the logical relevance of the other acts evidence "was independent of the inference that defendant was a person of bad character who had committed the crimes charged in conformity with such bad character" because "[t]he evidence showed a pattern of behavior in committing sexual assaults that did not relate to any character flaws or propensity." *Id.*

¶ 22 Both *Martinez* and *Rath* indicate that trial courts are under no obligation to analyze other acts evidence under the doctrine of chances during their *Spoto* analyses. Instead, trial courts retain the discretion to apply the doctrine of chances when they see fit. We accordingly reverse the court of appeals' effective holding that the trial court in this case abused its discretion by admitting other acts evidence without first finding that the evidence satisfied the doctrine of chances. We now turn to the record to determine whether the trial court abused its discretion in admitting the other acts evidence under *Spoto*.

## C. The Trial Court Did Not Abuse Its Discretion

¶ 23 The trial court conducted an appropriate *Spoto* analysis to admit evidence that Jones sexually assaulted women in Florida and Louisiana under CRE 404(b) and section 16–10–301. Its application of the four-part *Spoto* test was not "manifestly arbitrary, unreasonable, or unfair." *Yusem*, 210 P.3d at 463. Therefore, the court of appeals erred when it reversed the trial court's decision to admit the other acts evidence.

¶ 24 The prosecution offered the other acts evidence from Florida and Louisiana to show Jones's "common plan, scheme, or design, and to rebut [Jones's] defense of consent." The Florida evidence indicated that Jones sexually assaulted a white woman with blond hair late at night after she had been drinking. The Florida victim suffered severe facial injuries as a result of her attack. The Louisiana evidence showed that Jones sexually assaulted another white woman after offering to give the victim a ride as she walked back to her hotel at about 3:00 a.m. That victim had also been drinking and suffered facial injuries when Jones put his hand over her mouth to hold it closed during the assault.

¶ 25 Applying the first *Spoto* prong, the trial court found that the other acts evidence related to the material facts of whether Jones had a common plan, scheme, or design and whether Jones caused J.R. to submit to sexual intercourse against her will. The record supports this assessment because the other evidence from Florida and Louisiana tended to show that Jones had a common plan to have sex with women without their consent.

¶ 26 The trial court then determined that the other acts evidence was logically relevant under the second *Spoto* prong because it would "prove or disprove the existence of consent in this case, if, under prior similar circumstances, the defendant committed acts against the will of the alleged victims." The record supports this assessment as well because the other acts evidence indicated that Jones had non-consensual sex with two different white women, late at night, after the women had been drinking.

¶ 27 Turning to the third *Spoto* prong, the trial court found that the logical relevance of the evidence was "independent to the inference of bad character" because the evidence could lead to the inference that Jones had a common plan, scheme, or design to have sexual relations with white women who had been drinking without their consent late at night while holding their mouths closed. Consistent with *Rath*, the trial court here determined that the other acts evidence in this case demonstrated a pattern of behavior from which the jury could infer that Jones committed the charged sexual offenses independent of the impermissible inference that Jones acted in conformity with his bad character.

¶ 28 With respect to the fourth *Spoto* prong, the trial court weighed the probative value of the other acts evidence against the danger of unfair prejudice. It reasoned that "there. always is a concern that the jury will view Mr. Jones as a person of bad character, but ... the Court finds that the prejudice is no greater than in any other type of case in which similar transaction evidence is admitted." In addition, because J.R. died of causes unrelated to the sexual assault prior to trial, the probative value of the other acts evidence was higher than it would have been had J.R. been available to testify. The trial court therefore concluded that "the probative value is not substantially outweighed by the danger of unfair prejudice to the defendant." This conclusion is not manifestly arbitrary, unreasonable, or unfair because the trial court weighed the probative value of the evidence against the danger of unfair prejudice in a manner supported by the record.

¶ 29 In sum, the trial court adequately assessed each prong of the four-part *Spoto* test to find the other acts evidence admissible. It therefore did not abuse its discretion when it admitted evidence of the Florida and Louisiana sexual assaults.

### III. Conclusion

¶ 30 We hold that evidence of other acts need not satisfy the doctrine of chances to also satisfy the second and third prongs of the *Spoto* test. While the doctrine of chances provides one avenue by which other acts evidence can fulfill the second and third *Spoto* prongs, trial courts have no obligation to apply the doctrine of chances when applying *Spoto*. The trial court in this case conducted a proper *Spoto* analysis and did not abuse its discretion by not also analyzing the other acts evidence under the doctrine of chances. We accordingly reverse the judgment of the court of appeals and remand for reinstatement of Jones's convictions.

¶ 31 CHIEF JUSTICE BENDER concurs in the judgment.

CHIEF JUSTICE BENDER, concurring in the judgment.

¶ 32 The majority reverses the court of appeals' decision on grounds that it required trial courts to analyze the doctrine of chances to determine whether evidence of other acts is admissible under CRE 404(b) or section 16–10–301, C.R.S. (2013), and that it erroneously overturned the trial court's admission of evidence that Jones allegedly sexually assaulted two other women. Maj. op. ¶¶ 1, 9–10, 17, 23, 29–30.

¶ 33 Although I agree with the majority's conclusion that the trial court did not abuse its discretion in admitting evidence of Jones's alleged sexual assaults in Florida and Louisiana, I disagree with the majority's characterization of the court of appeals' decision as effectively requiring all trial courts to the use the doctrine of chances in every *Spoto* analysis. In addition, I write separately to discuss how the purpose for which the other acts evidence is being offered affects the degree of similarity required to satisfy *Spoto's* logical relevance prongs—that is, when a trial court uses similarity of conduct as its theory of logical relevance, it must consider whether the evidence is being offered to prove identity, which requires a higher degree of similarity between the alleged other acts and the defendant's alleged conduct in the case, or whether the evidence is being offered to prove something else such as intent or mistake, which requires a lesser degree of similarity. Hence, I respectfully concur in the majority's judgment to reverse the court of appeals' decision and to remand the case to the trial court for reinstatement of Jones's convictions, but I do so under a different rationale.

¶ 34 The majority construes the court of appeals' decision as "effectively" holding that "other acts evidence *must* satisfy the doctrine of chances to also satisfy the second and third prongs of the *Spoto* test." Maj. op. ¶ 17. However, I read the court of appeals' decision to permit but not require use of the doctrine of chances in a *Spoto* analysis: "In a sexual assault prosecution, evidence of the defendant's other alleged sexual assaults *may* be logically relevant under the 'doctrine of chances.'" *People v. Jones*, 313 P.3d 626,

631–32, No. 09CA2362, 2011 WL 3616006 (Colo.App. Aug. 18, 2011) (emphasis added). Consequently, I disagree with the majority that the court of appeals' decision requires clarification of the role played by the doctrine of chances in a trial court's *Spoto* analysis. Maj. op. ¶ 12. In my view, the court of appeals' decision is consistent with the majority's holding that a trial court retains discretion to analyze *Spoto's* logical relevance prongs without use of the doctrine of chances. Maj. op. ¶¶ 1, 9, 17, 22, 30.

¶ 35 I turn now to a discussion of how the purpose for which other acts evidence is offered relates to a trial court's analysis of *Spoto's* logical relevance prongs. Here, as the majority describes, the trial court below determined that evidence of Jones's two other alleged sexual assaults was admissible to show a "common plan, scheme, or design, and to rebut [Jones's] defense of consent." Maj. op. ¶ 4. In determining whether to admit this evidence, the trial court did not explicitly state its theory of logical relevance. Nevertheless, similarity of conduct is the only reasoning provided by the trial court, namely that the evidence showed that Jones had non-consensual sex with two other white women, late at night, after the women had been drinking, and while holding their mouths closed. Maj. op. ¶¶ 26–27. Moreover, the basis for Jones's appeal of the trial court's admission of the evidence has been that the alleged Florida and Louisiana sexual assaults are not sufficiently similar to the conduct alleged in this case to be admissible under CRE 404(b) or section 16–10–301. Maj. op. ¶ 6.

¶ 36 Like the doctrine of chances, similarity of conduct is but one theory of logical relevance that trial courts are permitted to use in determining whether to admit other acts evidence. *People v. Spoto*, 795 P.2d 1314, 1319 (Colo.1990) ("[T]here is generally no similarity of conduct requirement concerning evidence of other crimes, wrongs or acts offered for permissible purposes such as proof of intent, preparation, plan or accident under CRE 404(b)."); *see* Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 2.13 (2012) ("The test should be logical

relevance rather than similarity ... [and] the judge should demand proof of similarity only if the proponent's theory of logical relevance assumes similarity.").

¶ 37 When employing similarity of conduct as its theory of logical relevance, a trial court must pay particular attention to the purpose for which the other acts evidence is being offered so as to know what amount and type of similarity is required for admissibility, and so as to guard against the admission of improper propensity, disposition, or character evidence that has been veiled under a vague showing of similarity. This is especially true in a case like this, where the other acts evidence has been offered to show a common plan of sexual assaults:

> [T]he courts sometimes use the rubric "plan" as a subterfuge for admitting the defendant's similar sexual misdeeds. The spurious plan becomes the pretext for admitting the evidence.

Imwinkelried § 4.13.

¶ 38 We have previously distinguished the high degree of similarity required to admit other acts evidence for the purpose of proving the defendant's identity from the lower degree of similarity required to admit other acts evidence for other purposes such as proving the defendant's intent or mistake. *People v. Rath*, 44 P.3d 1033, 1042 (Colo. 2002); *see also* Imwinkelried § 8.07. Whether sufficient similarity has been shown, then, depends entirely on the purpose for which the other acts evidence is being offered, with more similarity required for other acts evidence being offered to prove the defendant's identity than for other acts evidence being offered to prove the occurrence of the act or the intent of the defendant.

¶ 39 Turning to the facts of this case, the trial court determined that the purpose of offering evidence of Jones's two other alleged sexual assaults was to disprove Jones's defense of consent and not to prove Jones's identity. When other acts evidence is offered to prove identity, the other acts evidence must demonstrate both similarity to the charged offense and dissimilarity to the methods generally used in such offenses. *People v. Honey*, 198 Colo. 64, 596 P.2d 751, 755 (1979) (analysis of other acts evidence

under common law test superseded by passage of CRE 404(b)). When other acts evidence is offered for permissible CRE 404(b) purposes other than identity, "it suffices that all incidents fall into the same general category." Edward J. Imwinkelried, *The Use of Evidence of an Accused's Uncharged Misconduct to Prove Mens Rea: The Doctrines Which Threaten to Engulf the Character Evidence Prohibition*, 51 Ohio St. L.J. 575, 576 (1990); *see also People v. Everett*, 250 P.3d 649, 658 (Colo.App.2010).

¶ 40 In assessing the trial court's ruling, the court of appeals turned to the doctrine of chances for assistance in examining the degree of similarity between Jones's two other alleged sexual assaults and the alleged conduct involving J.R. The doctrine of chances operates by process of elimination, eliminating random chance as an explanation for the offense charged and making alternative explanations more likely without entailing a propensity inference. A classic example of the doctrine of chances is the "brides in the bath" case, in which a defendant charged with murdering his wife has had multiple wives who accidentally drowned in a bathtub. *See Spoto*, 795 P.2d at 1319. Pursuant to the requirements of CRE 404(b), the doctrine of chances relies on an objective intermediate inference regarding the statistical likelihood of the similarities between the circumstances of the other acts evidence and the charged offense rather than a subjective intermediate inference concerning the probability that the defendant committed the offense based on his or her character. Imwinkelried § 4.01.

¶ 41 In the context of a sexual assault case, the doctrine of chances can serve as a proper rationale to admit evidence of other alleged sexual assaults to disprove consent because when two or more victims "tell similar stories, the chances are reduced that both are lying or that one is telling the truth and the other is coincidentally telling a similar false story." *Everett*, 250 P.3d at 657 (internal quotation marks and citation omitted). Contrary to the majority's suggestion, the court of appeals' use of the doctrine of chances did not "box" in its analysis of the trial court's ruling, maj. op. ¶ 17, but rather provided an objective and proper means by which the

court of appeals could analyze the trial court's theory of logical relevance.

¶ 42 Jones's alleged sexual assaults in Florida and Louisiana were neither identical to one another nor identical to the alleged conduct involving J.R. However, both alleged sexual assaults possessed general similarities to the alleged conduct involving J.R., which the trial court found. The court of appeals determined that these similarities were insufficient to admit the evidence under CRE 404(b) or section 16–10–301, but it failed to analyze the purpose for which the evidence was offered. Because evidence of Jones's two other alleged sexual assaults was introduced to rebut Jones's defense of consent rather than to establish Jones's identity, it was necessary only that the similarities among them be general in nature. Thus, in my view there was no abuse of discretion by the trial court.

¶ 43 For these reasons, I concur in the judgment.