Penny Powers THOMAS, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

Allyn David McMULLIN, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

Nos. 94SC204, 94SC236.

Supreme Court of Colorado,
En Banc.

May 8, 1995.

Harry J. Holmes, Longmont, Stuart S. Keown, Broomfield, for petitioners.

Stuart A. VanMeveren, Dist. Atty., Eighth Judicial Dist., Loren B. Schall, Asst. Dist. Atty., Fort Collins, for respondent.

Justice VOLLACK delivered the Opinion of the Court.

Penny Powers Thomas (Thomas) appeals from an order of the Larimer County District Court in *Thomas v. People*, No. 94SC204, and Allyn David McMullin (McMullin) appeals from an order of the Larimer County District Court in *McMullin v. People*, No. 94SC236. In each case, the district court concluded that the county court erred in suppressing the breath test results and in dismissing the DUI charges.

We granted Thomas' and McMullin's petitions for writ of certiorari to review the district court orders in each respective case. We consolidated the cases for our review and affirm the district court's holding in both *Thomas* and *McMullin*. We hold that the results of a breathalyzer test administered in substantial compliance with the rules and regulations of the state board of health under section 42–4–1202(3)(b), 17 C.R.S. (1993), are admissible in the prosecution of a DUI case. Further, we conclude that any deficiency in the evidence with respect to the state board of health certifications should be considered as to the weight to be given the test results and not to their admissibility.

## I.

### A. *Thomas*

On May 8, 1992, Deputy William Eckrich of the Larimer County Police Department observed a car which failed to dim its headlights for on-coming traffic. Officer Eckrich stopped the car and spoke with Thomas, the driver. Officer Eckrich noted that Thomas' eyes were red and glassy, that she smelled of an alcoholic beverage, and that her speech was slurred. Officer Eckrich administered a roadside sobriety test, which Thomas failed to perform satisfactorily.

Thomas was thereafter placed under arrest and transported to the Larimer County Detention Center, where Officer Eckrich, a certified operator, administered a blood test to determine Thomas' blood alcohol content (BAC). The test results showed that Thomas had a BAC of approximately .208.

Thomas was subsequently charged with driving a motor vehicle with excessive alcohol content (DUI per se), in violation of section 42–4–1202(1.5)(a), 17 C.R.S. (1993); driving a motor vehicle under the influence of alcohol, in violation of section 42–4–1202(1)(a), 17 C.R.S. (1993); and failing to dim headlights, in violation of section 42–4–215, 17 C.R.S. (1993). Thomas entered a plea of not guilty to the charges and requested a jury trial.

Prior to the trial, Thomas moved to prevent the State from introducing the results of her breathalyzer test. Thomas maintained that the prosecution had not produced certificates of compliance from the Colorado Department of Health which would have demonstrated that at the time the test was administered to her neither the breath test machine nor the standard solution, which is used to verify the calculations of the machine, was working properly. Thomas asserted that the prosecution was required to introduce these certificates of compliance into evidence to

establish a foundation for the admission of the test results, pursuant to section 42–4–1202.2, 17 C.R.S. (1993).[1] The prosecution contended that its copy of the certificate for the solution standard satisfied the requirements of section 42–4–1202.2.

The county court granted Thomas' motion. The county court ruled that the results of the breath test should be suppressed because the test was not administered in strict compliance with the statute and accordingly dismissed the charge of DUI per se.

At trial, Thomas was found not guilty of DUI and the lesser included offense of driving while ability impaired, and found guilty of failing to dim her headlights.

The prosecution appealed the county court's suppression ruling to the district court. The district court concluded that the county court erred in suppressing Thomas' breath test results and in dismissing the charges of DUI. The district court, relying on *Siddall v. Colorado Department of Revenue*, 843 P.2d 85 (Colo.App.1992), and section 42–4–1202(3)(b)(I), 17 C.R.S. (1993), ruled that there are no specific minimum foundational requirements for the admissibility of breath test results at criminal trials and that "[a]ny deficiency in the evidence showing whether the [breath test results] complied with the applicable regulatory standards goes to the weight to be given the blood test results and not to their admissibility." The district court remanded the case for trial on the DUI per se charge only.

Thomas now argues that both sections 42–4–1202(6) and 42–4–1202.2, 17 C.R.S. (1993), require the prosecution to lay a foundation that the breathalyzer was in working order and was operating properly prior to introducing the breath test results at trial. Thomas additionally maintains that the substantial

compliance requirement set forth in section 42–4–1202(3)(b)(I) cannot be relied upon until the prosecution has established that the machine was operating properly.

### B. *McMullin*

McMullin was stopped in his car for speeding by Officer Corey Pass of the Estes Park Police Department. Officer Pass smelled an alcoholic beverage on the defendant's breath, and noted that McMullin's eyes were red and that he stumbled when he exited the car. Officer Pass arrested McMullin and took him into custody based on the officer's suspicion that he was driving under the influence of alcohol. Officer Pass, who was a trained and certified operator, gave McMullin a breath test, the results of which indicated a BAC of .183.

McMullin was thereafter charged with the offenses of driving a vehicle when the amount of alcohol in his blood was .010 grams of alcohol per two hundred ten liters of breath, in violation of section 42–4–1202(1.5)(a) (DUI per se); driving a vehicle under the influence of alcohol, in violation of section 42–4–1202(1)(a); and speeding, in violation of section 42–4–1001, 17 C.R.S. (1993).

Prior to trial, McMullin moved to suppress the results of his breath test. McMullin argued that the evidence should be suppressed because the prosecution had failed to introduce official records of the Colorado Department of Health, which were attested to by the executive director of the Department and bear its official seal, as mandated by section 42–4–1202.2. The prosecution asserted that it introduced copies of the certificates of compliance from the Estes Park Police Department concerning the breath testing instruments, and that such notarized copies were sufficient to satisfy the statutory requirements set forth in section 42–4–1202.2.[2]

---

1. Section 42–4–1202.2, 17 C.R.S. (1993), requires the Colorado Department of Health to certify in writing that breath test instruments are in proper working order and also specifies the procedures governing record-keeping and the admissibility into evidence of such certificates.

2. Specifically, the prosecution presented a document, attested to by the Director of Division of Laboratories for the Department of Health, which certified that the Estes Park Police Depart-

ment was authorized to operate the Intoxilyzer Model 5000 and that the machine was in working order. The document was notarized by a notary public who confirmed that the document was a copy of the original. The notary public also notarized a document stating that the officer is a certified operator of the machine. Finally the notary public notarized a document which was a copy of the "original standard simulator solution."

The county court granted McMullin's motion and dismissed the charge of DUI per se. At trial, McMullin was acquitted of the charge of DUI, but was found guilty of speeding.

The prosecution appealed the county court's ruling to the Larimer County District Court, arguing that there are no minimum requirements for the admission of breath test results, and that the county court should have taken judicial notice of the testing device and methods. The prosecution also argued that the certificates of compliance from the Colorado Department of Health were self-authenticating, notarized by a notary public in Estes Park, and should have been admitted into evidence.

The district court reversed the county court's ruling. In reaching its decision, the district court analyzed sections 42–4–1202.2 and 42–4–1202(3)(b)(I) and reasoned that,

if the prosecution fails to strictly comply with 42–4–1202.2, the Court will then look to section 42–4–1202(3)(b)(I). The certifications will be admissible unless the court finds that noncompliance with a board of health rule impairs the validity and reliability of the testing method or test results. Otherwise, the court should admit the certifications and the noncompliance of the certification will go to the weight given to the test results.

This Court disapproves of the County Court ruling to not admit the intoxilyzer certification and the test results. The intoxilyzer has an attestation by the Director of the Colorado Department of Health, Division of Laboratories and is accompanied by a seal of the Department of Health. Therefore, the certification met the requirements of section 42–4–1202.2 and should have been admitted into evidence.

This Court finds that the County Court should have [also] admitted into evidence the standard simulator solution certification. . . . Although the simulator solution certification does not fully comply with section 42–4–1202.2, the County Court did not find that noncompliance with a board of health rule impairs the validity and reliability of the certifications. Therefore, the county court should have admitted the certification into evidence and considered its weight based on its noncompliance with section 42–4–1202.2.

The district court did not remand the case for a new trial on the charge of DUI per se, as it found that jeopardy had attached.

In his briefs before this court, McMullin argues that the prosecution has the burden of presenting foundational evidence establishing that the breathalyzer was in working order and was operating properly in order to admit into evidence the breath test results. Further, McMullin contends that the prosecution must demonstrate that the test results were certified or attested to by the Department of Health.

## II.

We granted certiorari to consider the following questions in the *Thomas* and *McMullin* cases, respectively:

Whether the district court erred in concluding that there are no specific minimum foundational requirements for the admissibility of breath test results into evidence at criminal trials.

Whether the district court erred in ruling that the defendant's breath test results, along with notarized copies of the Colorado Department of Health certificates of compliance, should have been admitted into evidence at the defendant's trial for driving while under the influence of alcohol.

We now affirm the district court's ruling in each case and address these issues together.

Section 42–4–1202, 17 C.R.S. (1993), outlines the procedures for testing, administering, prosecuting, and imposing penalties on an individual who is suspected and later convicted of driving a motor vehicle under the influence of alcohol. Section 42–4–1202(6), which directs the court to take judicial notice of the methods of testing and the design and operation of the testing devices, provides as follows:

In all actions, suits, and judicial proceedings in any court of this state concerning alcohol-related or drug-related traffic of-

fenses, the court shall take judicial notice of methods of testing a person's alcohol or drug level and of the design and operation of devices, as certified by the department of health, for testing a person's blood, breath, saliva, or urine to determine his alcohol or drug level. This subsection (6) shall not prevent the necessity of establishing during a trial that the testing devices used were working properly and that such testing devices were properly operated. Nothing in this subsection (6) shall preclude a defendant from offering evidence concerning the accuracy of testing devices.

§ 42–4–1202(6). Section 42–4–1202.2 provides as follows:

> **Records—prima facie proof.** Official records of the department of health relating to certification of breath test instruments, certification of operators and operator instructors of breath test instruments, certification of standard solutions, and certification of laboratories shall be official records of the state, and copies thereof, attested by the executive director of the department of health or his deputy and accompanied by a certificate bearing the official seal for said department that the executive director or his deputy has custody of said records, shall be admissible in all courts of record and shall constitute prima facie proof of the information contained therein. The department seal required under this section may also consist of a rubber stamp producing a facsimile of the seal stamped upon the document.

§ 42–4–1202.2.

Section 42–4–1202(3)(b)(I) pertains to the rules and regulations governing the actual administration of the breath tests on an individual suspected of driving under the influence of alcohol. Section 42–4–1202(3)(b)(I) provides as follows:

> The tests shall be administered at the direction of a law enforcement officer having probable cause to believe that the person had been driving a motor vehicle in violation of subsection (1) or (1.5) of this section and in accordance with rules and regulations prescribed by the state board of health concerning the health of the person being tested and the accuracy of such

testing. Strict compliance with such rules and regulations shall not be a prerequisite to the admissibility of test results at trial unless the court finds that the extent of noncompliance with a board of health rule has so impaired the validity and reliability of the testing method and the test results as to render the evidence inadmissible. In all other circumstances, failure to strictly comply with such rules and regulations shall only be considered in the weight to be given to the test results and not to the admissibility of such test results. It shall not be a prerequisite to the admissibility of test results at trial that the prosecution present testimony concerning the composition of any kit used to obtain blood, urine, saliva, or breath specimens. A sufficient evidentiary foundation concerning the compliance of such kits with the rules and regulations of the department of health shall be established by the introduction of a copy of the manufacturer's or supplier's certificate of compliance with such rules and regulations if such certificate specifies the contents, sterility, chemical makeup, and amounts of chemicals contained in such kit.

§ 42–4–1202(3)(b)(I).

As the statute sets forth, strict compliance with such rules and regulations is not a prerequisite to the admissibility of test results at trial unless the trial court finds that the extent of noncompliance impaired the validity and reliability of the testing method and the test results so as to render the evidence inadmissible.

In *People v. Bowers,* 716 P.2d 471 (Colo. 1986), this court held that substantial compliance with department of health rules, as found in section 42–4–1202(3)(b), is a separate and distinct inquiry from the requirement that the prosecution must lay a proper foundation for the admission of breath test results into evidence at a criminal trial. In *Bowers,* the chemical testing of the defendant's breath in a criminal case had not been conducted in strict compliance with the board of health rule requiring continuous observation of the subject for at least twenty minutes prior to collection of the breath sample. We analyzed the statutory procedures gov-

erning the testing methods prescribed by the department of health and found that strict compliance with the department's regulations was not required, provided that the proponent of such evidence presented foundational evidence adequate to establish that the administered breath test was scientifically valid and reliable and was conducted by a qualified person using equipment that was in proper working order. We stated:

> Although section 42–4–1202(6) authorizes a trial court to take judicial notice of the rules of the Board of Health with respect to the testing methods for measuring the alcohol content of a person's breath, the proponent of the test results must still present foundation evidence establishing "that the testing devices used were in proper working order and that such testing devices were properly operated." § 42–4–1202(6), 17 C.R.S. (1984). The operative effect of the statutory scheme, therefore, is to render breath test results admissible when the test is administered in compliance with the judicially noticed rules of the Board of Health and when the proponent of the evidence shows that the testing devices were in proper working order and were properly operated by a qualified person.

*Id.* at 474–75.

Further, this court in *Colorado Department of Revenue v. McBroom,* 753 P.2d 239 (Colo.1988), held that the court of appeals erred in reversing a driver's license revocation order because the testing officer did not provide proof or testify that he was certified to conduct the breath test. In *McBroom,* we interpreted *Bowers* to signify that a breath test is to "be administered in accordance with health department rules and regulations" and that, " 'if there was a deficiency in the evidence of compliance with board of health regulations, ... the intoxilyzer test results are not automatically inadmissible.' " *Id.* at 242 (quoting *Brewer v. Motor Vehicle Division,* 720 P.2d 564, 568 (Colo.1986)). We have therefore determined that the failure to demonstrate one's certification to conduct a breath test, a foundational requirement found in section 42–4–1202.2, does not auto-matically render inadmissible the breath test results at trial.

The Colorado Court of Appeals in *Siddall v. Department of Revenue,* 843 P.2d 85 (Colo. App.1992), found that the absence of the manufacturer's or supplier's certificate showing compliance of the blood test kits with the applicable regulatory requirements did not automatically render the blood test results inadmissible. The court of appeals determined that section 42–4–1202(3)(b)(I) established that "*if* the Department [chose] to introduce such a manufacturer's or supplier's certificate of compliance in connection with any test kit used, *then* such a certificate *shall* constitute a sufficient evidentiary foundation concerning the compliance of such a kit with the applicable regulatory requirements." *Id.* at 86. The court of appeals concluded that "any deficiency in the evidence here as to whether the blood test kit was shown to have complied with the applicable regulatory requirements went to the weight to be given the blood test results and not to their admissibility." *Id.* at 87.

▮▮▮▮ Section 42–4–1202(6) and *Bowers* make clear that the State must show that the testing devices were in proper working order and were properly operated by a qualified person prior to admission of breath test results. The import of the *McBroom* decision is that the State does not have to make this showing in any particular way. 753 P.2d at 242. Introduction of department of health certifications regarding the reliability of breath test instruments and the competency of breath test operators is sufficient to meet this obligation. § 42–4–1202.2; *Siddall,* 843 P.2d at 86. The State, however, may make this showing through the testimony of the operator of the machine or any other relevant evidence. *See McBroom,* 753 P.2d at 242 (citing officer's testimony as indicative of proper operation of breath test device); *Brewer,* 720 P.2d at 568 (holding officer's testimony, coupled with proof of compliance with operational procedures established by board of health, sufficient to establish that test was properly conducted). Once a prima facie showing is made that the testing device was in proper working order and was properly operated by a qualified person, and that

the test was administered in substantial compliance with department of health regulations, the test results are admissible. If such a prima facie showing is made, other evidence suggesting deficiencies in the testing devices, testing method, or in the operator's administration of the test affects the weight of the test results and not their admissibility. We now consider whether the State satisfied its burden of making a prima facie showing, at the respective trials of Thomas and McMullin, that the breath tests in question were in proper working order and were properly operated.

Having reviewed the record of each of these proceedings, we conclude that the district court properly reversed the county court's suppression of the breathalyzer results. In *Thomas*, the record reveals that Officer Eckrich was a certified instructor and operator of the breathalyzer test. The prosecution presented a copy of the certificate for the solution standard. The fact that the prosecution failed to provide any certification documents as to the instruments should have gone to the weight to be accorded the breath test results at trial and not to their admissibility. Further, the county court failed to determine, as *Bowers* requires, that the absence of documentation impaired the validity and reliability of the testing method and test results so as to render the breath test results inadmissible.

In *McMullin*, the district court found that the intoxilyzer certification, which was attested to by the Director of the Colorado Department of Health, Division of Laboratories, and was accompanied by the seal of the Department of Health, met the requirements of section 42–4–1202.2 and should have been admitted into evidence. The district court further noted that the standard simulator solution certification, which was attested to by a notary public who stated that the document was a copy of the "original standard simulator solution results," did not fully comply with section 42–4–1202.2. The district court nevertheless determined that the document should have been admitted into evidence because the county court did not find

that noncompliance with a board of health rule impaired the validity and reliability of the certification. Further, had the breath test results been admitted at trial, the operator could have testified that the machine was working properly, that it was certified at the public law enforcement agency where the test was conducted, and that the operator was qualified to administer the test and followed all of the proper operational procedures.

Based on the governing case law and the plain language of the statutory scheme, we reiterate that the results of a breathalyzer test administered in substantial compliance with the rules and regulations of the state board of health under section 42–4–1202(3)(b) are admissible in the prosecution of a DUI case.[3] We additionally conclude that any deficiency in the evidence with respect to the state board of health certifications should be considered as to the weight to be given the test results and not as to their admissibility.

---

**3.** Our holding is not limited to a criminal case. Section 42–4–1202(6) does not distinguish between civil and criminal cases, but it applies "in all actions, suits, and judicial proceedings."