The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
July 3, 2019

## 2019COA101

**No. 16CA1468, *People v. Hamilton* — Evidence — Hearsay — Hearsay Exceptions — Hearsay Within Hearsay — Authentication — Machine-generated Records**

A division of the court of appeals decides that a computer-generated report of the contents of a cell phone is not hearsay so long as it was created without human input or interaction. To qualify as a computer-generated report that does not constitute hearsay, the party seeking to introduce the report must lay a foundation that it was machine-generated without human input. In addition, the division holds that a trial court commits error by giving multiple jury instructions that unnecessarily highlight the defendant's prior conviction.

Court of Appeals No. 16CA1468
City and County of Denver District Court No. 13CR3362
Honorable Michael J. Vallejos, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Rayon D. Hamilton,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE LIPINSKY
Román and J. Jones, JJ., concur

Announced July 3, 2019

Philip J. Weiser, Attorney General, Jennifer L. Carty, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jon W. Grevillius, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Rayon D. Hamilton, appeals his conviction for sexual assault. J.F., the victim, accused Hamilton of drugging her at a bar, separating her from her friends, taking her to an apartment without her consent while she was unconscious, and sexually assaulting her.

¶ 2     Hamilton contends that the district court erred by (1) admitting hearsay to establish that neither Hamilton's phone nor the victim's phone contained text messages about which Hamilton had testified; (2) admitting evidence of two other instances in which Hamilton had been accused of sexual assault; (3) adding qualifying "factually innocent" language to the acquittal instruction; and (4) adding a reference to a prior conviction in the instruction advising the jury that Hamilton had been acquitted of a prior sexual assault charge.

¶ 3     We agree with his first contention, reverse on that basis, and remand for a new trial. We also agree that the district court erred in adding a reference to Hamilton's prior conviction to the acquittal instruction. We reject his remaining contentions.

# I. Background

¶ 4      While at bars with friends, J.F. ran into Hamilton, whom she had met through an ex-boyfriend. Hamilton bought a round of shots for J.F. and her friends. J.F. testified she thought her "drink had drugs in it" because she could not remember much after she had "taken the shot." J.F. told the jury the next thing she remembered was waking up on her stomach in an apartment, with her hands being held above her head, and Hamilton was having sex with her.

¶ 5      J.F. testified that she did not agree to have sexual intercourse with Hamilton. According to her testimony at trial, she kept saying "no" and tried to wiggle away from him.

¶ 6      Hamilton admitted to having sexual intercourse with J.F. but claimed it had been consensual. He testified that J.F. had been awake throughout the encounter.

¶ 7      The district court instructed the jury on one count of second degree kidnapping, two counts of sexual assault, and one count of distribution of a controlled substance. Hamilton was convicted on one of the sexual assault counts and the distribution count and was acquitted on the remaining counts.

## II. Admissibility of Detective Slay's Testimony Concerning the Phone Reports

¶ 8 Hamilton told the investigating detective, Bryan Slay, that J.F. had sent him multiple texts while they were drinking together at the bars. He claimed that J.F. had also sent him texts the day after the alleged sexual assault. Hamilton gave similar testimony at trial.

¶ 9 Detective Slay testified that police department personnel downloaded the contents of Hamilton's and J.F.'s phones and generated reports (the Reports) reflecting the phones' contents. At trial, the prosecutor did not seek to introduce the Reports into evidence or call as witnesses the police department employees who had examined the phones or generated the Reports. Instead, Detective Slay testified that, based on his review of the Reports, neither phone contained text messages from J.F. to Hamilton.

¶ 10 Hamilton contends that Detective Slay's testimony about the contents of the Reports was hearsay, the admission of which violated CRE 803(7) and 803(10) and his rights under the Confrontation Clauses of the United States and Colorado Constitutions. He argues that Detective Slay's testimony unfairly prejudiced him because it contradicted his own testimony that J.F.

had texted him both the night of the alleged sexual assault and the next morning.

¶ 11    Analysis of the admissibility of Detective Slay's testimony concerning the Reports requires us to determine whether the Reports were inadmissible hearsay, whether Detective Slay's testimony constituted a second layer of inadmissible hearsay, and whether the prosecutor established the reliability and authenticity of the Reports.

### A.    The Hearsay Issues

#### 1.    Standard of Review

¶ 12    We review a trial court's evidentiary rulings for an abuse of discretion. *People v. Ibarra*, 849 P.2d 33, 38 (Colo. 1993). However, a trial court's decision on whether a statement constitutes hearsay is a legal conclusion, which we review de novo. *People v. Medina*, 25 P.3d 1216, 1223 (Colo. 2001); *see also Dutch v. United States*, 997 A.2d 685, 689 (D.C. 2010) (concluding that the determination of whether a statement falls under an exception to the hearsay rule is a legal conclusion).

¶ 13    The harmless error standard applies to review of trial errors of nonconstitutional dimension preserved by objection. *Hagos v.*

*People*, 2012 CO 63, ¶ 12, 288 P.3d 116, 119.  Such an error is harmless where "there is no reasonable possibility that it contributed to the defendant's conviction."  *Pernell v. People*, 2018 CO 13, ¶ 22, 411 P.3d 669, 673; *People v. Cohen*, 2019 COA 38, ¶ 11, ___ P.3d ___, ___.  Under this standard, reversal is required only if the error "substantially influenced the verdict or affected the fairness of the trial proceedings."  *Tevlin v. People*, 715 P.2d 338, 342 (Colo. 1986).

¶ 14    We review unpreserved trial errors for plain error.  *Hagos*, ¶ 14, 288 P.3d at 120.  "Plain error is obvious and substantial."  *Id.* We reverse under plain error if the error "so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction."  *Id.* (quoting *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005)).

2.    Preservation of Hamilton's Arguments Regarding Detective Slay's Testimony

¶ 15    The defense did not object to the prosecutor's two questions to Detective Slay regarding the contents of Hamilton's phone. Hamilton, however, directs us to two other places in the record where he asserts he preserved this issue.

5

¶ 16    First, during Detective Slay's cross-examination, defense counsel asked, "Detective, he just asked you a question about texts on [J.F.'s] phone" and "[w]ere you testifying by your personal knowledge or some report that was given to you that you read?" After Detective Slay responded that his testimony was based on "[a] report from that phone being downloaded," defense counsel "move[d] to strike that testimony as the foundation is hearsay." Defense counsel argued that the prosecutor could have "[laid] the foundation to admit the text messages from [J.F.'s] phone, but they chose not to. Now they are trying to . . . admit hearsay statements from the detective about a report that he read." But defense counsel's objection concerned Detective Slay's testimony regarding the contents of J.F.'s phone and not the contents of Hamilton's phone.

¶ 17    Second, Hamilton asserts that his counsel preserved his argument regarding the contents of his phone during a bench conference addressing a juror's proposed questions to Detective Slay: "Were there texts on [J.F.'s] phone to [Hamilton]? . . . Does the phone company have no record of the texts? Did you investigate with [Hamilton's] and [J.F.'s] phone companies?"

6

Defense counsel objected to the questions, stating, "[w]ere there texts on [J.F.'s] phone to [Hamilton]?  I object.  That's the same objection I made the last time."  Like the earlier objection, this objection addressed evidence of the contents of J.F.'s phone.

¶ 18     We therefore conclude that Hamilton did not preserve his argument that the district court erred in admitting Detective Slay's testimony regarding the contents of Hamilton's phone, but preserved his argument that the court erred in allowing Detective Slay to testify regarding the contents of J.F.'s phone.

### 3.    The Reports Were Hearsay

#### a.    The Prosecutor Introduced the Content of the Reports into Evidence to Prove the Truth of the Matter Asserted

¶ 19     Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  CRE 801(c).  Hearsay is inadmissible except as provided by the Colorado Rules of Evidence or other applicable statutes or rules.  CRE 802; *People v. Buckner*, 228 P.3d 245, 249 (Colo. App. 2009).

¶ 20     A declarant is "a person who makes a statement."  CRE 801(b).  A "statement" is either "(1) an oral or written assertion or

7

(2) nonverbal conduct of a person, if it is intended by him to be communicative." CRE 801(a).

¶ 21 During rebuttal, the prosecutor introduced the content of the Reports through Detective Slay's testimony. He testified that he had "the tech guys work on [the phone]," and that he was able to view "the report that [he] had the technical people run." Detective Slay then said that, based on his review of the Reports, Hamilton's and J.F.'s phones did not contain any texts between Hamilton and J.F.

¶ 22 We disagree with the People's argument that the prosecutor did not introduce the content of the Reports into evidence for the truth of the matter asserted. In characterizing the content of the Reports, Detective Slay was not merely providing a "personal observation about the existence of any text messages" or explaining "what actions the detective took as part of his investigation." The prosecutor went far beyond merely asking Detective Slay whether he had obtained Hamilton's and J.F.'s phones and whether the police had analyzed them.

¶ 23 Rather, his testimony focused on the key content of the Reports — their alleged assertion that the phones did not contain

the text messages from J.F. to Hamilton about which Hamilton had testified. The prosecutor specifically asked Detective Slay whether the Reports showed that J.F. had texted Hamilton on the relevant days. This question elicited testimony regarding the truth of the matters asserted in the Reports.

      b.     The Prosecutor Did Not Establish that the Reports Were Machine-Generated Without Human Input or Interpretation

¶ 24     Even if the prosecutor introduced the Reports into evidence to prove the truth of their contents, the Reports would not be hearsay if a machine generated them automatically. Such records are not hearsay because no "person" or "declarant" made a communicative "statement" within the meaning of CRE 801. *Buckner*, 228 P.3d at 250. As a division of this court noted in *Buckner*, this reasoning is in accord with decisions from other jurisdictions applying substantially similar hearsay rules. *Id.* (citing *United States v. Hamilton*, 413 F.3d 1138, 1142-43 (10th Cir. 2005)); *see United States v. Washington*, 498 F.3d 225, 231 (4th Cir. 2007) (concluding that only a person can make a statement and nothing "said" by a machine is hearsay); *Hamilton*, 413 F.3d at 1142-43 (holding information automatically generated by a computer was not hearsay

9

because there was no "declarant" or "statement" involved); *United States v. Khorozian*, 333 F.3d 498, 506 (3d Cir. 2003) (deciding that an automatically generated time stamp was not hearsay because it was not uttered by a person). *See generally People v. Marciano*, 2014 COA 92M-2, ¶ 28, 411 P.3d 831, 838 (in deciding cases involving the Colorado Rules of Evidence, we consider instructive cases from other jurisdictions interpreting analogous rules).

¶ 25    The Reports were machine-generated because

- the operator made no statements of any kind;

- the operator did not say or write the information the machine generated;

- the operator simply operated the machine;

- the machine used a common scientific and technological process;

- the conclusion of the machine-generated report was drawn solely from the machine's data; and

10

- the source of the data was independent of human observation or reporting.

*See Washington*, 498 F.3d at 230; Adam Wolfson, Note, *"Electronic Fingerprints": Doing Away with the Conception of Computer-Generated Records as Hearsay*, 104 Mich. L. Rev. 151, 159 (2005) ("[H]uman interaction often triggers the computer processes that create the records; however, the crucial factor is whether the record is a mark of computer activity or if it is the electronically-saved statements of a human user.").

¶ 26 A computer-generated record constitutes hearsay, however, when its creation involves human input or interpretation. *See United States v. Cestnik*, 36 F.3d 904, 907 (10th Cir. 1994) (concluding that money transfer records constituted hearsay because an employee created them by entering information into the computer); *see also Baker v. State*, 117 A.3d 676, 683 (Md. Ct. Spec. App. 2015) (concluding that call records not generated solely by the internal operations of the computer, but that likely involved a human's data entry, constituted hearsay); *cf. Cranston v. State*, 936 N.E.2d 342, 344 (Ind. Ct. App. 2010) (concluding that evidence tickets produced by a chemical breath test machine are not hearsay

because they do not involve any material human intervention).  For these reasons, we hold that the district court erred in determining that the Reports were not hearsay.

### 4. Detective Slay's Testimony Was Also Hearsay

¶ 27    We next consider whether Detective Slay's testimony regarding the Reports was itself hearsay.  Hearsay included within hearsay is inadmissible unless each part of the combined statements conforms with an exception to the hearsay rule.  CRE 805.  "Where a statement contains multiple layers of potential hearsay, the court must analyze each layer separately to determine whether it falls within a recognized hearsay exception or exclusion." *People v. Phillips*, 2012 COA 176, ¶ 101, 315 P.3d 136, 160.

¶ 28    "For hearsay within hearsay to be admitted as evidence, a hearsay exception must apply to each link of the chain." *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 650 (10th Cir. 2008) (interpreting analogous federal rule).

¶ 29    Rather than offer the Reports themselves into evidence, the prosecutor put Detective Slay on the witness stand to tell the jury what the Reports said.  He explained that "[t]he people that we have downloaded that information in our police technical unit" and that

he was characterizing "[a] report from that phone being downloaded."

¶ 30    Detective Slay's testimony about the Reports added a second layer of hearsay. *See* CRE 805. His testimony was hearsay because he described to the jury the content of the Reports to prove the truth of their content. *See* CRE 801(c). For this reason, absent the application of a hearsay exception, Detective Slay could not have testified about the contents of the Reports, even if the Reports themselves were admissible. *See People v. Raffaelli*, 701 P.2d 881, 884 (Colo. App. 1985) (holding that detective's or caseworker's testimony regarding the content of a doctor's report was inadmissible hearsay under CRE 802 and CRE 805). But the People do not argue that any hearsay exception applies, and the application of any such exception is not otherwise apparent to us.

B.    The Reliability and Authenticity of the Reports

¶ 31    In addition to reviewing whether the Reports and Detective Slay's testimony regarding the Reports were hearsay, we also must address whether the prosecutor established their reliability and authenticity.

13

¶ 32    An analysis of the admissibility of a machine-generated record must consider the reliability and accuracy of the process used to create and obtain the underlying data, and whether the report is authentic.  *See People v. Huehn,* 53 P.3d 733, 736 (Colo. App. 2002) (explaining that the rules of relevancy, authentication, and hearsay govern admissibility of a computer printout); *see also Washington,* 498 F.3d at 231 ("Any concerns about the reliability of . . . machine-generated information is addressed through the process of authentication not by hearsay . . . ."); *Baker,* 117 A.3d at 683 (concluding that the admissibility of records that are entirely self-generated should be determined on the basis of the reliability and accuracy of the process used to create and obtain the data).

### 1.    Reliability of Machine-Generated Records

¶ 33    The reliability of machine-generated records can be established "through the testimony of the operator of the machine or any other relevant evidence."  *Thomas v. People*, 895 P.2d 1040, 1045 (Colo. 1995); *Brewer v. Motor Vehicle Div.*, 720 P.2d 564, 568 (Colo. 1986) (holding officer's testimony, coupled with proof of compliance with operational procedures established by board of health, sufficient to establish that test was properly conducted).

¶ 34 The proponent of the admissibility of computer-generated evidence must lay a sufficient foundation to establish that the machine's results are valid and reliable, the machine was in proper working order at the time it generated the report, and the operator was qualified to operate it. *See Thomas*, 895 P.2d at 1045; *see also People v. Bowers*, 716 P.2d 471, 474 (Colo. 1986) (holding that the prosecution must lay a proper foundation for the admission of breath test results into evidence).

2.    Authentication of Machine-Generated Records

¶ 35 The authentication requirement for admission of evidence is satisfied if the proponent establishes that the evidence is what the proponent claims it to be. CRE 901(a); *People v. Heisler*, 2017 COA 58, ¶ 7, ___ P.3d ___, ___; *Huehn*, 53 P.3d at 736.

¶ 36 "[E]lectronic evidence may be authenticated in a number of different ways," including through the testimony of a witness with knowledge that evidence is what it is claimed to be and through circumstantial evidence. *People v. Glover*, 2015 COA 16, ¶ 25, 363 P.3d 736, 741 (quoting *Tienda v. State*, 358 S.W.3d 633, 639 (Tex. Crim. App. 2012)). The proponent may authenticate electronically generated printouts through the testimony of a person with

personal knowledge of how the printouts were generated and that they are what they are claimed to be. *See Heisler*, ¶ 12, ___ P.3d at ___; *Glover*, ¶ 24, 363 P.3d at 741; *People v. Bernard*, 2013 COA 79, ¶ 10, 305 P.3d 433, 435.

### 3. The Prosecutor Did Not Establish That the Reports Were Reliable and Authentic

¶ 37    The prosecutor did not show that the Reports were reliable or authentic. *See Huehn*, 53 P.3d at 736; *see also Washington*, 498 F.3d at 231; *Baker*, 117 A.3d at 683. Nor did the prosecutor introduce any evidence that the police's machine had accurately downloaded the contents of Hamilton's and J.F.'s phones or that the Reports were what the prosecutor claimed them to be. *See Thomas*, 895 P.2d at 1045; *Glover*, ¶ 12, 363 P.3d at 739.

¶ 38    Specifically, the record lacks any evidence that

- the machine used to generate the Reports produces accurate reports of the contents of phones;

- the machine was in proper working order at the time it generated the Reports;

- the person operating the machine at the time was properly qualified;

16

- the person followed proper procedures in operating the machine;

- the Reports were valid and reliable; or

- Detective Slay was qualified to interpret the Reports.

¶ 39    Without this type of evidentiary foundation, Detective Slay's testimony regarding the extraction of data from Hamilton's and J.F.'s phones, the generation of the Reports, and his interpretation of the Reports was speculative.

¶ 40    We reject the People's argument that the Reports were properly authenticated based on the prosecutor's ipse dixit assertion that the Reports reflected the contents of Hamilton's and J.F.'s phones. Counsel's unsupported representation to the district court did not sufficiently establish the reliability and admissibility of the Reports. *See Heisler*, ¶ 12, ___ P.3d at ___.

C.    The Admission of Detective Slay's Testimony Regarding the
Contents of J.F.'s Phone Constituted Reversible Error

¶ 41    We hold that the district court erred in admitting Detective Slay's testimony regarding the contents of J.F.'s phone into evidence because, as explained above,

- the Reports were inadmissible hearsay;

17

- Detective Slay's testimony regarding the content of the Reports was also inadmissible hearsay; and

- the prosecutor failed to prove that the Reports were reliable and authentic.

¶ 42 Because Hamilton preserved his objection to Detective Slay's testimony regarding J.F.'s phone, we apply the harmless error standard in deciding whether the district court's admission of the testimony requires reversal. *See Hagos*, ¶ 12, 288 P.3d at 119.

¶ 43 We discern a reasonable possibility that the jury considered Detective Slay's testimony that J.F.'s phone contained no text messages to Hamilton in deciding that J.F. had not consented to engage in sexual intercourse with him. Much of Hamilton's testimony concerned how J.F. had shown interest in him by texting him before and after the alleged sexual assault, in contrast to J.F.'s testimony that "there was never a physical attraction" and that there was "nothing that would have ever made [her] want to have sex with him."

¶ 44 If the jury had believed Hamilton's testimony about the text messages, it could reasonably have concluded that J.F had shown an interest in him. This determination, in turn, could have

supported a conclusion that they had engaged in consensual sexual intercourse and, therefore, no sexual assault had occurred. Detective Slay's hearsay testimony directly contradicted this key evidence and, moreover, undermined Hamilton's credibility.

¶ 45 Detective Slay's testimony was particularly prejudicial because it was part of the prosecutor's rebuttal case. Hamilton had no opportunity to respond to the evidence or provide an explanation as to why the police did not find any text messages from J.F. to Hamilton on J.F.'s phone. The record also indicates that the jury gave significant weight to the evidence showing that J.F. had not texted Hamilton. Several of the jurors' questions for Detective Slay concerned whether J.F. had texted Hamilton.

¶ 46 Therefore, we conclude there is a reasonable possibility that Detective Slay's testimony about the contents of J.F.'s phone contributed to Hamilton's conviction of sexual assault, such that it undermines our confidence in the outcome of the case. *People v. Casias*, 2012 COA 117, ¶ 63, 312 P.3d 208, 220. (Because we reverse Hamilton's conviction based on the erroneous admission of Detective Slay's hearsay testimony regarding the contents of J.F.'s phone, we need not decide whether admission of Detective Slay's

testimony regarding the contents of Hamilton's phone was plain error.)

¶ 47    For the above reasons, we reverse Hamilton's judgment of conviction for sexual assault and remand for a new trial. (Given our reversal of Hamilton's judgment of conviction for sexual assault based on the erroneous admission of Detective Slay's testimony regarding the Reports, we do not address Hamilton's contention that allowing the testimony also violated his rights under the Confrontation Clauses of the United States and Colorado Constitutions.)

### III.    Admissibility of Evidence of the Prior Sexual Assault Charges Against Hamilton

¶ 48    We address the remaining issues Hamilton raises on appeal, as they may arise again at the new trial.

¶ 49    Hamilton argues that the district court erred in admitting evidence of the acts underlying his two prior sexual assault charges. (Hamilton was acquitted of one of the charges and the other charge was withdrawn.) The prosecutor argued that the evidence of the two prior sexual assault charges was admissible because such evidence had "the same or similar character to the

20

sexual assault perpetrated against [J.F.]" and revealed a common pattern:

- identifying potential victims who were drinking with friends and had become intoxicated;

- separating them from their friends;

- taking them, without their consent, to an apartment;

- forcibly holding them down;

- sexually assaulting them; and

- Hamilton's DNA appearing on vaginal swabs taken from each victim.

¶ 50    The victims in the two prior incidents testified that Hamilton had followed this pattern when he sexually assaulted them. The evidence thus supports the commonality between the two prior sexual assault charges and the charges against Hamilton concerning J.F. The district court found that the evidence of the prior charges of sexual assault was admissible under CRE 404(b), applying the four-part test delineated in *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990), as well as under the doctrine of chances, because it was relevant to the issue of consent and Hamilton's credibility. Hamilton's counsel had argued that the evidence of the

two prior sexual assault charges was inadmissible because it differed significantly from the allegations underlying the charges involving J.F. He makes the same argument on appeal. We are not persuaded.

## A.     Standard of Review

¶ 51     We review a trial court's decision to admit or exclude other acts evidence for an abuse of discretion. *People v. Jones*, 2013 CO 59, ¶ 11, 311 P.3d 274, 276. A district court abuses its discretion when its ruling on the admissibility of other acts evidence is manifestly arbitrary, unreasonable, or unfair, or based on a misapprehension of the law. *People v. Trammell*, 2014 COA 34, ¶ 10, 345 P.3d 945, 947-48.

## B.     The Law Governing Admissibility of Other Act Evidence

¶ 52     All relevant evidence is admissible unless otherwise provided by constitution, statute, or rule. CRE 402. Relevant evidence is that evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." CRE

403.  Relevant evidence is not admissible to prove the character of a person by showing that he acted in conformity with that character on a particular occasion.  CRE 404(b).

¶ 53  Notwithstanding these limitations, CRE 404(b) allows admission of evidence of a defendant's other crimes, wrongs, or acts to prove, for example, motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  CRE 404(b); *Jones*, ¶ 12, 311 P.3d at 276.

¶ 54  Recognizing the "grave statewide concern" that sexual offenses pose, the General Assembly adopted a statute to delineate clearly the CRE 404(b) admissibility requirements for other acts evidence in prosecutions for sexual crimes.  *Jones*, ¶ 13, 311 P.3d at 277 (quoting § 16-10-301(1), C.R.S. 2018).  In a sexual offense case, "[t]he prosecution may introduce evidence of other acts of the defendant to prove the commission of the offense as charged for any purpose other than propensity." § 16-10-301(3).  Such purposes include the following:

> Refuting defenses, such as consent or recent fabrication; showing a common plan, scheme, design, or modus operandi, regardless of whether identity is at issue and regardless of whether the charged offense has a close nexus

as part of a unified transaction to the other act; showing motive, opportunity, intent, preparation, including grooming of a victim, knowledge, identity, or absence of mistake or accident; or for any other matter for which it is relevant.

*Id.*

¶ 55    Before admitting other acts evidence under CRE 404(b) and section 16-10-301(3), a trial court must be satisfied, by a preponderance of the evidence, that the prior act occurred, and must consider the admissibility of the evidence under the four-prong *Spoto* analysis. *Jones*, ¶ 14, 311 P.3d at 277; *Kinney v. People*, 187 P.3d 548, 554 (Colo. 2008). Other acts evidence is admissible only if (1) it relates to a material fact in the case; (2) the evidence is logically relevant; (3) the logical relevance of the evidence is independent of the intermediate inference prohibited by CRE 404(b) that the defendant has a bad character; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *Spoto*, 795 P.2d at 1318.

1.  Application of *Spoto*

a.  The Other Act Evidence Must Relate to a Material Fact

¶ 56    Under the first prong of the *Spoto* analysis, the other acts evidence must relate to a material fact, which is a fact "of consequence to the determination of the action." *Spoto*, 795 P.2d at 1318 (quoting CRE 401).

¶ 57    In applying the first *Spoto* prong, the district court found that the "prior acts relate to a material fact, primarily the consent and credibility of the alleged victim in this case."

¶ 58    Whether J.F. consented is a material fact. While Hamilton admitted to engaging in sexual intercourse with J.F., his theory of defense was that J.F. had consented. Indeed, during closing argument, Hamilton's counsel argued that "just because somebody has been drinking alcohol . . . [or] is intoxicated does not mean they cannot consent to the sexual activity" and also that "[y]ou can be high on drugs and consent to sex."

¶ 59    The prosecutor proffered the other acts evidence to prove intent and to rebut Hamilton's consent theory by showing a common plan, scheme, design, modus operandi, and preparation. These factors are permissible to show a defendant's

intent and to refute a consent defense.  *See People v. Martinez*, 36 P.3d 154, 159 (Colo. App. 2001).

¶ 60 We reject Hamilton's contention that modus operandi evidence is not relevant unless the identity of the assailant is at issue. Section 16-10-301(3) specifically provides that the prosecution may introduce evidence of other acts to show "modus operandi, regardless of whether identity is at issue." § 16-10-301(3).

  b. The Other Acts Evidence Must Be Logically Relevant

¶ 61 Under the second prong of *Spoto*, the evidence must be logically relevant; it must have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  *Jones*, ¶ 16, 311 P.3d at 277 (quoting CRE 401); *accord Spoto*, 795 P.2d at 1318.

¶ 62 In reviewing the second *Spoto* prong, the district court found that "the evidence is logically relevant" because the two prior acts "go directly to the issue of consent and credibility of [J.F.]."  The district court further found that "there are striking similarities in the other two offenses" that are relevant to whether "Hamilton was

acting with or without consent or whether he was sexually
assaulting this individual."

¶ 63    The prosecutor argued that the details of the two prior sexual
assault charges were part of a pattern similar to the facts involving
the alleged sexual assault of J.F.  The record supports this
inference.

¶ 64    The evidence of the other acts has a tendency to make
Hamilton's intent to sexually assault J.F. and J.F.'s lack of consent
more probable than it would be without the evidence.  *See Jones*,
¶ 16, 311 P.3d at 277; *Spoto*, 795 P.2d at 1318.  Thus, this
evidence had a tendency to allow reasonable jurors to infer that
Hamilton sexually assaulted J.F.

    c.    The Other Acts Evidence Must Create an Inference
Independent of Its Reflection on the Defendant's Character

¶ 65    The third prong of *Spoto* "requires that logically relevant
evidence achieve its relevance in some way other than through the
impermissible inference that a person who engages in a bad act
does so because he acts in conformity with his bad character."
*Jones*, ¶ 16, 311 P.3d at 277; *Spoto*, 795 P.2d at 1318.  While the
other acts evidence is admissible even if it would allow an

impermissible character inference, the proffered evidence must be logically relevant independent of that inference. *Jones*, ¶ 16, 311 P.3d at 277. "Plan, scheme, design, modus operandi, and motive . . . are well-accepted methods of proving the ultimate facts necessary to establish the commission of a crime, without reliance upon an impermissible inference from bad character." *People v. Rath*, 44 P.3d 1033, 1040 (Colo. 2002).

¶ 66 The district court found that the prior act evidence was "not admitted to show character, but rather, again, went to the issue of consent and credibility." The district court further found that the evidence went to "proof of motive, intent, modus operandi, plan, [and] absence of mistake."

¶ 67 The logical relevance of the evidence is independent of the inference that Hamilton is a person of bad character who sexually assaulted J.F. in conformity with his bad character. The evidence demonstrated a pattern of behavior in committing sexual assaults from which the jury could infer that Hamilton sexually assaulted J.F., independent of any character flaws or propensity.

¶ 68 Further, the inference that Hamilton acted in conformity with his pattern of identifying women for sexual assault does not rely on

28

his character. Rather, it rests on the facts common to the other acts and his alleged sexual assault of J.F.: targeting intoxicated women, separating them from their friends, taking them to an apartment against their will, and sexually assaulting them. This is modus operandi evidence, which allows for proof of the ultimate facts in a criminal case without relying on an inference of bad character. *See id.* at 1041.

¶ 69    We reject Hamilton's contention that the other acts evidence was not sufficiently similar to the charges involving J.F. to be admissible under section 16-10-301(3). Evidence of other acts may be introduced in sexual assault cases to show common plan or modus operandi regardless of whether the charged offense has a close nexus as part of a unified transaction involving the other acts. *See* § 16-10-301(3). Consistent with *Spoto*, the district court reviewed the underlying allegations in all three instances and found that there were "striking similarities in the other two offenses." The record supports the district court's finding.

### d. The Risk of Unfair Prejudice Must Not Substantially Outweigh the Probative Value of the Other Acts Evidence

¶ 70 Under the fourth prong of *Spoto*, "we must assess whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." *Spoto*, 795 P.2d at 1318. The district court retains a great deal of discretion in determining whether the other acts evidence is sufficiently probative for legitimate purposes. *Rath*, 44 P.3d at 1041. The balance required by CRE 403 favors admission of the evidence. Therefore, a reviewing court must afford the evidence the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected. *Id.* at 1043.

¶ 71 A court does not consider Rule 403's "probative value" in isolation but evaluates the "marginal" or "incremental" probative value of the evidence relative to the other evidence in the case. *Id.* Thus, the court must weigh "the logical force of the evidence and the proponent's need for the evidence" in light of other available evidence. *Id.* (quoting *Martin v. People*, 738 P.2d 789, 794 (Colo. 1987)). Evidence of other acts is "typically relevant and highly probative" and should therefore be more readily available in sexual

assault cases than in other types of criminal proceedings. *People v. Villa*, 240 P.3d 343, 350 (Colo. App. 2009) (quoting § 16-10-301(1)). Generally, "the probative value of such evidence will outweigh any danger of unfair prejudice." *Id.* at 352 (quoting § 16-10-301(1)).

¶ 72 In reviewing the fourth *Spoto* prong, the district court found that, although the other acts evidence is prejudicial, its "probative value is not substantially outweighed by the danger of unfair prejudice."

¶ 73 Because J.F.'s disputed testimony is the only direct evidence of the sexual assault, additional evidence "may have particular 'marginal' or 'incremental' probative value." *Rath*, 44 P.3d at 1043. Although there were differences in the circumstances surrounding each of the alleged sexual assaults, they shared a number of significant characteristics that evidence a pattern of behavior rather than unrelated acts. The combination of the three incidents added substantial weight to the inference that Hamilton employs a technique to isolate intoxicated women for the purpose of sexually assaulting them.

¶ 74 The other acts evidence directly addressed Hamilton's contention that J.F. had consented to sexual intercourse with him.

It added substantial weight to the prosecutor's proof that J.F. was a credible witness and that she did not consent to engage in sex with Hamilton. Other acts evidence is admissible to corroborate a victim's testimony of the existence of a fact. *See id.*

¶ 75 Thus, although the other acts evidence was undoubtedly prejudicial to Hamilton, the record supports the district court's finding that the probative value of that evidence in proving the elements of the offense was not substantially outweighed by any danger of unfair prejudice to Hamilton.

¶ 76 Additionally, because the district court instructed the jury that it could consider the prior charges of sexual assault only for the limited purpose of "proving [Hamilton's] motive, intent, modus operandi, plan, absence of mistake, and the issue of consent," it reduced the danger of unfair prejudice. *See People v. Everett*, 250 P.3d 649, 662 (Colo. App. 2010). Nothing in the record suggests that the jury failed to understand or apply those instructions.

### 2. The District Court Did Not Abuse Its Discretion in Admitting the Other Acts Evidence

¶ 77 The district court sufficiently assessed each prong of the four-part *Spoto* analysis in finding that the facts underlying the two prior

charges of sexual assault were admissible as other acts evidence.

We hold that the district court's application of the four-prong

analysis was not "manifestly arbitrary, unreasonable or unfair,"

and, therefore, that the district court did not abuse its discretion in

admitting the other acts evidence under CRE 404(b) and section 16-

10-301(3). *Yusem v. People*, 210 P.3d 458, 463 (Colo. 2009).

### 3.     The Doctrine of Chances

¶ 78     The district court alternatively found that the evidence of the

two prior charges of sexual assault was admissible under the

doctrine of chances. Under the doctrine of chances, the

prosecution must establish that

> (1) the evidence of other acts must be roughly
> similar to the charged crime; (2) the number of
> unusual occurrences in which the defendant
> has been involved must exceed the frequency
> rate for the general population; and (3) there
> must be a real dispute between the
> prosecution and the defense over whether the
> actus reus occurred.

*People v. Weeks*, 2015 COA 77, ¶ 29, 369 P.3d 699, 706.

¶ 79     The doctrine of chances "provides one theory of relevance

under which a trial court may determine that other acts evidence

satisfies the second and third prongs of the *Spoto* analysis." *Jones*,

33

¶ 17, 311 P.3d at 277. However, district courts are under no obligation to analyze other acts evidence under the doctrine of chances. *Id.* at ¶ 22, 311 P.3d at 278. While evidence that satisfies the doctrine of chances may also satisfy elements of the *Spoto* analysis, a district court may admit CRE 404(b) evidence under *Spoto* without also determining whether the evidence is admissible under the doctrine of chances. *Id.* at ¶ 9, 311 P.3d at 276.

¶ 80 Because we conclude that the district court did not err in admitting the other acts evidence under *Spoto*, we need not determine whether the evidence was also admissible under the doctrine of chances. (We also need not consider Hamilton's argument that the admission of evidence of the other acts of sexual assault violated his rights to due process and an impartial jury. Due process does not bar the admission of evidence under CRE 404(b). *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990); *People v. Conley*, 804 P.2d 240, 244 (Colo. App. 1990).)

IV. The Jury Instructions on Hamilton's Prior Conviction and Acquittal

¶ 81 Hamilton contends that the district court violated his right to due process by (1) adding language to the acquittal instruction

34

telling the jury it should not presume he was "factually innocent" of sexually assaulting M.D. (a victim in one of the two prior sexual assault cases), even though he had been acquitted on the sexual assault charge; and (2) informing the jurors in the acquittal instruction that he had been convicted of kidnapping M.D.

## A. Standard of Review

¶ 82   We review jury instructions de novo, considering them as a whole to determine whether they accurately state the governing law. *People in Interest of J.G.*, 2016 CO 39, ¶ 33, 370 P.3d 1151, 1161. We review a district court's decision to give a particular instruction for an abuse of discretion. *Id.* A district court "abuses its discretion where its decision to provide an instruction is manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law." *Id.*

¶ 83   Under the harmless error standard, reversal is required if the preserved error "substantially influenced the verdict or affected the fairness of the trial proceedings." *Tevlin*, 715 P.2d at 342.

## B. Preservation

¶ 84   We disagree with the People that Hamilton did not preserve his arguments regarding the "factually innocent" and conviction

language added to the acquittal instruction. The defense objected to the prosecutor's proposed acquittal instruction "[j]ust in its entirety, telling the jury to presume or not to presume different things." Defense counsel further said, "I don't know that us opening the door and telling the jury that he was found not guilty of the sex assault . . . necessarily opens the door to the jury being informed that he was found guilty of felony kidnapping . . . ."

¶ 85    These objections preserved the defense's challenge to the inclusion of the "factually innocent" and conviction language in the acquittal instruction. Therefore, we review this issue for harmless error. *See Hagos*, ¶ 12, 288 P.3d at 119.

### C.    The Inclusion of the "Factually Innocent" Language in the Acquittal Instruction

¶ 86    Hamilton contends that the district court erred by informing the jury in the acquittal instruction that it should not presume he was "factually innocent" of sexually assaulting M.D. He contends that this language trivialized the presumption of innocence.

#### 1.    The Law Governing Acquittal Instructions

¶ 87    No per se rule either requires or bars the introduction of evidence of an acquittal; rather, district courts must determine

36

whether to admit such evidence on a case-by-case basis. *Kinney*, 187 P.3d at 557. An acquittal instruction is appropriate where the jury learns that the defendant was tried in another criminal case and may be speculating as to the outcome of that trial. *Id.* Under these circumstances, the probative value of a prior acquittal is significant. *Id.* A district court may allow evidence of the acquittal for the limited purpose of ensuring the jury does not give improper weight to the acts underlying the criminal charge in the prior case. *Id.*

¶ 88    Further, a district court concerned about possible juror confusion has the discretion to instruct the jury that it should not presume that the defendant was "factually innocent" solely because the jury in the prior case acquitted him. The district court can provide an instruction that the previous jury determined, for whatever reason, that the state had failed to prove the defendant's guilt beyond a reasonable doubt. *Id.* at 558.

2.    The District Court Did Not Err in Adding the "Factually Innocent" Language to the Acquittal Instruction

¶ 89    The acquittal instruction stated, in relevant part:

> The Defendant, Rayon Hamilton, was acquitted (or found not guilty) of sexually assaulting [M.D.]. He was convicted of kidnapping [M.D.].
>
> You, the jurors in this case, should not necessarily presume that because Mr. Hamilton was found guilty by a previous jury that the Defendant was factually guilty but rather that a previous jury determined that the state proved his guilt beyond a reasonable doubt. Similarly, you should not necessarily presume that because Mr. Hamilton was found not guilty of prior acts by a previous jury that the Defendant was factually innocent, but rather that the previous jury determined for whatever reason that the state failed to prove his guilt beyond a reasonable doubt.

¶ 90 The district court added the "factually innocent" language to the instruction because it was "fair that [the jury] hear that the acquittal is a burden issue and not really a factual issue." This language mirrored the language for acquittal instructions that the supreme court approved in *Kinney*. *See Kinney*, 187 P.3d at 558.

¶ 91 We therefore hold that the district court did not abuse its discretion by adding the qualifying "factually innocent" language to the acquittal instruction.

D. The Two Jury Instructions on Hamilton's Prior Conviction

¶ 92 Hamilton contends that the district court erred in adding qualifying "factually innocent" language to the acquittal instruction

38

and in adding a reference to Hamilton's prior kidnapping conviction to the instruction addressing Hamilton's prior acquittal of sexual assault.

¶ 93    In addition to the conviction language added to the acquittal instruction quoted above, the district court provided a cautionary instruction that said, in its entirety:

> The Defendant is to be tried for the crime charged in this case, and no other. You may consider the testimony of a previous conviction only in determining the credibility of the Defendant as a witness, and for no other purpose. When the Defendant testifies, his credibility is to be determined in the same manner as [that of] any other witness.

¶ 94    The People argue that the district court correctly instructed the jury on the kidnapping conviction because "[e]vidence of a prior felony conviction is admissible for purposes of affecting the credibility of the witness" and, "[i]f an acquittal is important to judge the credibility of the witness, then a conviction in the same proceeding is equally important."

1.    The Law Governing Jury Instructions Concerning Prior Convictions

¶ 95    Evidence of a prior criminal conviction is generally inadmissible because of its highly prejudicial effect. *Harper v.*

*People*, 817 P.2d 77, 85 (Colo. 1991). Such evidence casts "damning innuendo likely to beget prejudice in the minds of juries." *People v. Lucero*, 200 Colo. 335, 343, 615 P.2d 660, 665 (1980) (quoting *Stull v. People*, 140 Colo. 278, 284, 344 P.2d 455, 458 (1959)). Thus, the disclosure of a defendant's prior felony conviction to a jury will so burden the trial "with the baggage of his prior criminality that a fair trial as we know it bec[o]me[s] an impossibility." *Id.* at 344, 615 P.2d at 666.

¶ 96 However, "[w]hen a defendant exercises his statutory privilege of testifying, all prior felony convictions *and their nature* may be shown to impeach his testimony." *People v. Medina*, 40 Colo. App. 490, 493, 583 P.2d 293, 295 (1978) (quoting *Candelaria v. People*, 177 Colo. 136, 140, 493 P.2d 355, 357 (1972)).

¶ 97 The district court must advise a defendant, before he takes the witness stand, that the prosecution may respond to his testimony by disclosing his prior felony conviction to the jury. "[I]f the felony conviction is disclosed to the jury then the jury can be instructed to consider it only as it bears upon his credibility." *People v. Curtis*, 681 P.2d 504, 514 (Colo. 1984).

¶ 98    In the limited circumstances where prior convictions are admissible, "stringent standards apply and cautionary instructions must accompany the introduction of such prior convictions." *Harper*, 817 P.2d at 85. The cautionary instructions can alleviate the danger that a jury will misuse evidence of the defendant's prior conviction to find him guilty. *People v. Chavez*, 853 P.2d 1149, 1152 (Colo. 1993) (stating that a defendant is "entitled to an instruction explaining to the jury that evidence of his prior felonies was admitted only for the limited purpose of impeaching his credibility").

### 2.    The District Court Did Not Err in Providing a Cautionary Instruction on Hamilton's Prior Conviction for Kidnapping

¶ 99    Before Hamilton took the witness stand, the district court gave him the required advisement that, if he "were to testify and that [kidnapping] conviction is disclosed to the jury, then they would be instructed to consider the felony conviction only as it bears upon the issue of your credibility and for no other purpose." *See Curtis*, 681 P.2d at 514. Hamilton confirmed he understood the advisement and chose to testify anyway. Thus, the prosecutor was permitted to introduce evidence of the kidnapping conviction to

impeach Hamilton's credibility.  *See People v. Chavez*, 621 P.2d 1362, 1366 (Colo. 1981).

¶ 100   During Hamilton's testimony, defense counsel elicited evidence that Hamilton was "found not guilty of sexual[ly] assaulting [M.D.]," but that he was "found guilty of kidnapping [her]."  The prosecutor made no reference to the kidnapping conviction during cross-examination.  We agree with the People that the jury could consider Hamilton's kidnapping conviction in weighing his credibility.  *See id.*

### 3.   The District Court Erred in Adding a Reference to Hamilton's Prior Conviction to the Acquittal Instruction

¶ 101   We next turn to whether the district court erred in adding language regarding the kidnapping conviction to the acquittal instruction.  The district court's conviction language mirrored the acquittal language in the same instruction, but with "guilty" substituted for "not guilty of prior acts," and "innocent" and "proved his guilt" substituted for "failed to prove his guilt."  (The conviction language did not include the "for whatever reason" language that appears in the acquittal language of the instruction.)  Therefore, the

jury received two instructions reminding it of Hamilton's prior conviction.

¶ 102 We hold that the district court erred in adding the conviction language to the acquittal instruction, for four reasons.

¶ 103 First, the instruction went beyond the purpose of the cautionary conviction instruction discussed in *Chavez*. It did more than explain to the jury that the evidence of Hamilton's prior conviction was admitted for the limited purpose of impeaching his credibility. *See Chavez*, 853 P.2d at 1152. The conviction language added to the acquittal instruction made no reference to credibility.

¶ 104 Second, although the instruction gave the jury no more information about the prior conviction than it had obtained through Hamilton's testimony, the language in the instruction, coupled with the language of the stand alone instruction on the conviction, unnecessarily highlighted Hamilton's prior conviction. The People have provided no authority, nor can we find any, for the proposition that a district court may provide the jury with two or more instructions addressing a defendant's prior conviction.

¶ 105 Third, the addition of the conviction language to the acquittal instruction defeated the limited purpose of the acquittal instruction

— to ensure the jury did not give improper weight to the other acts evidence presented at trial and did not speculate whether Hamilton had been convicted on a charge for which he had been acquitted. *See Kinney*, 187 P.3d at 557. The reasons for providing an acquittal instruction do not give a district court license to inform the jurors in the same instruction that the defendant was convicted of a different offense in the same case. We therefore disagree with the People that, because the district court gave an instruction on Hamilton's acquittal for sexually assaulting M.D., that instruction needed to refer to Hamilton's conviction in the same case for kidnapping her.

¶ 106   Lastly, the conviction language added to the acquittal instruction was confusing and illogical. It told the jury that Hamilton may have been convicted of kidnapping M.D. even though he was not "factually guilty" of the crime, because the previous jury determined that the state had proved his guilt beyond a reasonable doubt. Although the district court surely did not intend to suggest that the earlier conviction was a miscarriage of justice, the jurors may have questioned how a jury could convict a defendant of an offense of which the defendant was not "factually guilty." Further, a

literal reading of the instruction suggested that the jury could convict Hamilton even if he was not "factually guilty" of sexually assaulting J.F.

¶ 107    Thus, we conclude that the district court erred in adding the conviction language to the acquittal instruction.  Because we reverse the judgment of conviction on other grounds, we need not determine whether the error was harmless.

## V.    Hamilton's Right to Due Process

¶ 108    Finally, Hamilton contends that the district court violated his right to due process by allowing the prosecutor to present evidence of other acts for which he was tried and acquitted, and in instructing the jury on his prior conviction.

¶ 109    Because we resolve these issues in Hamilton's favor on non-constitutional grounds, we need not address his due process argument.  *People ex rel. Salazar v. Davidson*, 79 P.3d 1221, 1251 (Colo. 2003).

## VI.    Conclusion

¶ 110    We reverse the judgment of conviction for sexual assault and remand for a new trial.

JUDGE ROMÁN and JUDGE J. JONES concur.

45